UNITED STATES of America,
Plaintiff-Appellant,

v.

Thomas M. ACKLEN,
Defendant-Appellee.

No. 81–5544.

United States Court of Appeals,
Sixth Circuit.

Argued April 23, 1982.

Decided Sept. 22, 1982.

John H. Cary, U. S. Atty., Knoxville, Tenn., John C. Cook, Asst. U. S. Atty., Chattanooga, Tenn., for plaintiff-appellant.

William H. Ortwein, Ortwein & Associates, Chattanooga, Tenn., for defendant-appellee.

Before EDWARDS, Chief Judge, CONTIE, Circuit Judge, and ENSLEN,* District Judge.

CONTIE, Circuit Judge.

Pursuant to 18 U.S.C. § 3731, the government appeals the granting of defendant's motion to suppress evidence obtained during the course of an inspection of his pharmacy conducted in accordance with 21 U.S.C. § 880. Defendant, who operates his own pharmacy, was indicted on 46 counts of forging prescriptions required to be kept on record under the Controlled Substances Act and of obtaining Schedule II drugs by means of a forged prescription, both in violation of 21 U.S.C. § 843.

Title II of the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970 (The Controlled Substance Act), 21 U.S.C. §§ 801–904, provides for government supervision of those engaged in manufacturing and distributing controlled drugs. The Act, which requires all who are so engaged to register with the U. S. Attorney General and to maintain certain records, imposes both civil and criminal penalties for its violation. It authorizes administrative inspections of pharmacies and drug manufacturers in order to check compliance with its provisions. The Act provides for the issuing of search warrants (§ 879) and of administrative inspection warrants (§ 880).

On three occasions prior to defendant's indictment, a Drug Enforcement Agency (DEA) inspector obtained an administrative inspection warrant and searched the premises of the defendant's pharmacy, each time removing prescriptions he suspected were forged or altered. Following his indictment, the defendant moved to suppress the evidence seized during the inspections on the grounds that the administrative warrants were issued on less than probable cause and therefore violated the fourth amendment. After a hearing, the trial court denied the motion as to the first administrative inspection and granted it as to the second and third. The Government now appeals the suppression of the fruits of the second administrative inspection.

## I.

On June 5, 1980, two investigators for the Tennessee Board of Pharmacy inspected defendant's pharmacy and came to suspect that some of the prescriptions for Schedule II drugs found at the pharmacy were forged or altered. State investigators then contacted Anderson, a compliance inspector for the DEA. After state and federal inspectors met and discussed the matter, Anderson applied for and received an administrative inspection warrant on July 21, 1980, on the grounds that the pharmacy had never been inspected pursuant to the Act.

During inspection of the pharmacy from July 22 through July 25, Anderson seized approximately 233 prescriptions, of which 167 were ultimately found to be forged or altered. Anderson gave defendant the *Miranda* warnings at the beginning of the inspection and obtained a handwriting sample.

On August 5, Anderson filed a compliance investigation report with the DEA in which he recommended criminal prosecution of the defendant. His supervisor approved the report on October 3.

On August 21, 1980, Anderson applied for a second administrative inspection warrant. At this time, the DEA had not yet made a decision on the course of action to take and had not referred the case to the Department of Justice or U. S. Attorney, although Anderson had discussed the case with the U. S. Attorney. On the application for the warrant, Anderson stated that numerous

---

* The Honorable Richard A. Enslen, U. S. District Judge, Western District of Michigan, sitting by designation.

prescriptions seized during the earlier inspection were found to be forged or altered and that the defendant had ordered unusually large quantities of Schedule II drugs between the first inspection and August 21. He stated that the purpose of the inspection was to determine whether forged prescriptions for Schedule II drugs were still being filled and retained as records, and to conduct an accountability audit of these drugs.

During the second search, the defendant was again given *Miranda* warnings and another handwriting sample was taken. Twenty-seven Schedule II prescriptions were seized; nineteen were found to be forged.

In December 1980, the DEA contacted the U. S. Attorney's office with the results of the administrative inspections. On March 4, 1981, Anderson applied for and obtained a third administrative warrant. On April 6, 1981, the grand jury indicted Acklen.

■ Upon considering the defendant's suppression motion, the district court found that the purpose of the first administrative inspection was to determine whether the pharmacy was complying with the record-keeping and regulatory requirements of the Act, but that the primary purpose of the second and third inspection was to uncover evidence in support of a criminal investigation. The judge's rulings on the first and third searches have not been appealed. His finding of fact, as it applies to the second search, is not clearly erroneous.

## II.

The issue before us is whether evidence seized pursuant to an administrative inspection warrant obtained under 21 U.S.C. § 880 should be suppressed in a criminal trial for violations of the Controlled Substances Act if the primary purpose of the administrative inspection search was to obtain evidence for criminal prosecution.

■ The fourth amendment protects people against unreasonable searches and seizures and provides that no warrants shall issue but upon probable cause. Whether a particular governmental intrusion falls within the protection of the fourth amendment depends upon whether the defendant has a reasonable expectation of privacy in the area searched or property seized. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). If he did have such a reasonable expectation, then, absent exigent circumstances, the government may conduct a search only after obtaining a warrant upon a showing of probable cause. The test for probable cause is whether "the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief" that certain items are the fruits, instrumentalities, or evidence of crime and that these items are presently to be found at a certain place. *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949).

■ A warrant is also generally required to conduct an administrative inspection of a private or commercial establishment, such as to check enforcement of building, health, or safety codes. *Marshall v. Barlow's Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). For purposes of an administrative search, however, "probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment].' " *Id.* at 320, 98 S.Ct. at 1824, citing *Camara v. Municipal Court,* 387 U.S. 523, 538, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967).

In accordance with Supreme Court law, the Act itself provides:

For the purposes of this section, the term "probable cause" means a valid public interest in the effective enforcement of this subchapter or regulations thereunder sufficient to justify administrative inspections of the area, premises, building, or conveyance, or contents thereof, in the

circumstances specified in the application for the warrant.

21 U.S.C. § 880(d)(1).

In the instant case there is no dispute that the affidavit in support of the application for the second warrant provided probable cause for the issuance of an administrative inspection warrant.[1] The district court, held, however, that because the primary purpose of the search was to gather evidence of a crime, the fourth amendment mandated that the DEA apply for a criminal warrant with its higher standard for probable cause.[2]

In so ruling, the district court indirectly relied on *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), in which the Supreme Court discussed the need for a warrant in order for fire officials to enter burned-out premises to investigate the cause of a fire. The Supreme Court held that:

> [A]n entry to fight a fire requires no warrant, and that once in the building, officials may remain there for a reasonable time to investigate the cause of the blaze. Thereafter, additional entries to investigate the cause of the fire must be made pursuant to warrant procedures governing administrative searches. [Citations omitted.] Evidence of arson discovered in the course of such investigations is admissible at trial, but if the investigating officials find probable cause to believe that arson has occurred and require further access to gather evidence

for a possible prosecution, they may obtain a warrant only upon a traditional showing of probable cause applicable to searches for evidence of crime. [Citations omitted.]

*Id.* at 511–12, 98 S.Ct. at 1950–51.

The holding in *Tyler* suggests that once evidence of a crime has been found, through the use of an administrative warrant or otherwise, further entry to gather evidence must be pursuant to a warrant obtained upon a traditional showing of probable cause.

Under the *Tyler* analysis, the finding of the district court that the primary purpose of the second search was to gather additional evidence of a crime would mean that the fourth amendment required the DEA to obtain a traditional warrant. *See United States v. Lawson,* 502 F.Supp. 158 (D.Md. 1980), relied on by the district court.

This circuit, however, has declined to apply *Michigan v. Tyler* to administrative searches conducted pursuant to the Coal Mine Health and Safety Act. *United States v. Consolidation Coal Co.,* 560 F.2d 214 (6th Cir. 1977), *vacated and remanded,* 436 U.S. 942, 98 S.Ct. 2841, 56 L.Ed.2d 783 (1978) (for further consideration in light of *Marshall v. Barlow's Inc.* and *Michigan v. Tyler*), *judgment reinstated,* 579 F.2d 1011 (6th Cir. 1978), *cert. denied* 439 U.S. 1069, 99 S.Ct. 836, 59 L.Ed.2d 34 (1979). In *Consolidation Coal,* we held that the administrative standard of probable cause was enough to support a warrant under the Act

---

1. The Seventh Circuit, relying on cases decided in the other circuits considering the question, has recently held that "a warrant affidavit averring either that a pharmacy has never been inspected or that it has recently received an inordinately large supply of a controlled drug is sufficient to establish probable cause to issue an administrative search warrant." *Matter of Searches & Seizures Conducted on October 2, and 3, 1980,* 665 F.2d 775, 777 (7th Cir. 1981).

2. Appellants propose that the affidavit supporting the application for the administrative inspection warrant actually met the more stringent requirements of traditional probable cause and that consequently any error on the part of the DEA agent was harmless. We decline to consider whether the affidavit established probable cause for a criminal search warrant;

for the purpose of the warrant requirement is not to have a reviewing court determine in retrospect whether probable cause existed but to interpose between the citizen and the police "the deliberate, impartial judgment of a judicial officer." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967), *quoting Wong Sun v. United States,* 371 U.S. 471, 481, 83 S.Ct. 407, 413, 9 L.Ed.2d 441 (1963). In the present case, the magistrate did not consider whether the DEA had established probable cause for a criminal warrant. If a criminal search warrant was required in the instant case, the defendant was denied his constitutional right to have a neutral magistrate determine the existence of probable cause before the search was conducted.

even though the mine inspection was intended to lead to a criminal prosecution. We found that the questioned searches "involved reasonable intrusions which were 'routine' in scope if not in motivation. Their regulatory character was not diminished by the fact that they were predicated upon overt criminal suspicion rather than on administrative necessity." *Consolidation Coal* at 218. We considered persuasive the fact that the criminal activity for which evidence was sought was activity declared criminal by the Act which authorized the inspection and that the "warrants themselves strictly limited the items which could be seized to those related to activities which would not have been engaged in by the Company but for the demands of the act." *Id.* at 220. We further stated:

> Where a search is routinely permissible on an administrative basis, it would indeed be anomalous if we were to raise the threshold probable cause requirement when the government presents concrete evidence of irregular conduct by the mine operator.

*Id.* at 220.

We find the reasoning of *Consolidation Coal* applicable to the present case. We note that in both cases inspection searches were made pursuant to a regulatory statute that imposes both civil and criminal penalties for its violation. In such a situation, to make the validity of the administrative inspection wholly dependent upon the motivation of the inspector would be to create a rule extremely difficult to administer, since the same violations may lead to either criminal prosecution or the imposition of civil sanctions. The validity of the administrative warrant should depend not upon the motivation of the inspector but upon the scope of the search and the manner in which it is conducted. *See In the Matter of Searches and Seizures Conducted on October 2, and 3, 1980,* 665 F.2d 775 (7th Cir. 1981) (holding that, where a warrant is issued upon probable cause under 21 U.S.C. § 880, the motivation of the DEA investi-

gator is immaterial to the validity of the search). To this effect, in a recent case analyzing the constitutionality of a warrantless search of mining records kept pursuant to 30 U.S.C. § 863, this court declined to "adopt a mode of analysis by which the constitutionality of the inspector's entrance into the mine office is to be judged by his purpose for entry," when he entered the mine during reasonable hours and inspected only records that were kept in part for governmental inspection. *United States v. Blue Diamond Coal Co.,* 667 F.2d 510, 518 (6th Cir. 1981), *petition for cert. filed* 50 U.S.L.W. 3840 (April 7, 1982) (No. 81–1870).

We note that in *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), the Supreme Court, determining the validity of an IRS summons issued to aid investigation of both civil tax liability and possible criminal fraud, distinguished between the motivation of the individual agent and the motivation of the IRS as an institution. The Court held that the IRS may issue a summons for such a dual purpose, regardless of the actual motives of the individual agent, as long as there has been no "institutional commitment" to criminal prosecution, *i.e.,* as long as the matter has not been referred to the Justice Department. We need not now determine whether this distinction should be applied to administrative inspection warrants issued by the DEA. For the Government has appealed only the suppression of the fruits of the second search, which was conducted before the DEA as an institution had committed itself to prosecuting Acklen. The Government has not appealed the suppression of the fruits of the third search, conducted after the DEA had referred the matter to the United States Attorney.[3]

### III.

The conclusion of the Supreme Court in *Tyler* that the fourth amendment

---

3. We note, however, that were the matter squarely before us, *LaSalle* would not be controlling; for *LaSalle* was decided on the basis of the congressional intent behind 26 U.S.C. § 7602, not upon consideration of the fourth amendment.

required a warrant rested upon the finding that Tyler had a reasonable expectation of privacy in the burned-out premises. The question before us is whether Acklen had a similar reasonable expectation of privacy in his prescription files. We think not. For in *Consolidation Coal* we noted that the fact that the mining industry had a history of close federal regulation made it "reasonable to assume that mine operators have a reduced expectation of privacy in their business offices than less highly scrutinized enterprises." *Consolidation Coal* at 220. In *United States v. Blue Diamond Coal Co.*, we recently reiterated that in the pervasively regulated mining industry the mine operator has a reduced expectation of privacy in items subject to administrative inspection. We now hold that the pharmaceutical industry, like the mining, firearms,[4] and liquor[5] industries, is a pervasively regulated industry and that consequently pharmacists and distributors subject to the Controlled Substances Act have a reduced expectation of privacy in the records kept in compliance with the Act.[6] *See United States v. Jamieson-McKames Pharmaceuticals, Inc.*, 651 F.2d 532 (8th Cir. 1981), *cert. denied*, 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982) (holding that pharmacist had no reasonable expectation of privacy in items subject to administrative inspection under the Food, Drug, & Cosmetic Act, 21 U.S.C. § 301 *et seq.*); *United States v. Schiffman*, 572 F.2d 1137 (5th Cir. 1978).

Consequently, we hold that the warrant issued August 21, 1980, was valid inasmuch as it was based on an administrative showing of probable cause under 21 U.S.C. § 880(d) and was conducted in accordance with the statute.

---

**4.** See *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972).

**5.** See *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970).

**6.** In upholding the warrantless search provisions of the Mine Safety and Health Act, the Supreme Court recently distinguished between pervasively regulated businesses and other businesses in terms of the owners' expectations

We REVERSE and REMAND for further proceedings consistent with this opinion.

GEORGE CLIFTON EDWARDS, Jr., Chief Judge, dissenting.

Respectfully I dissent. In *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), Justice Stewart's opinion for the court held:

> In summation, we hold that an entry to fight a fire requires no warrant, and that once in the building, officials may remain there for a reasonable time to investigate the cause of the blaze. Thereafter, additional entries to investigate the cause of the fire must be made pursuant to the warrant procedures governing administrative searches. *See Camara*, 387 U.S., at 534–539 [87 S.Ct., at 1733–1736]; *See v. Seattle*, 387 U.S. [541], at 544–545 [87 S.Ct. 1737, at 1739–1740, 18 L.Ed.2d 943]; *Marshall v. Barlow's, Inc.*, ante [436 U.S.], at 320–321 [98 S.Ct., at 1824–1825]. *Evidence of arson discovered in the course of such investigations is admissible at trial, but if the investigating officials find probable cause to believe that arson has occurred and require further access to gather evidence for a possible prosecution, they may obtain a warrant only upon a traditional showing of probable cause applicable to searches for evidence of crime. United States v. Ventresca*, 380 U.S. 102 [85 S.Ct. 741, 13 L.Ed.2d 684].

436 U.S. at 511–12, 98 S.Ct. at 1950–51. (Emphasis added).

Since I believe the facts in our instant case involved a situation where the Drug Enforcement Agency had "probable cause" that the crime had occurred and "require[d] further access to gather evidence for possi-

---

of privacy. In the former, "the federal regulatory presence is sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." In the latter, the owner "may have little real expectation that his business will be subject to inspection." *Donovan v. Dewey*, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981).

ble prosecution," I would hold that a probable cause showing was required by the Fourth Amendment for the second search in this case.

For this reason and those ably presented by District Judge Wilson's opinion, I would affirm the judgment of the District Court.