**UNITED STATES of America, Appellee,**

**v.**

**GEL SPICE COMPANY, INC. and Barry Engel, Defendants-Appellants.**

No. 1455, Docket 85–1037.

United States Court of Appeals,
Second Circuit.

Argued July 15, 1985.

Decided Sept. 13, 1985.

Raymond W. Phillips, Office of Consumer Litigation, Civ. Div., Dept. of Justice, Washington, D.C. (Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Raymond J. Dearie, U.S. Atty., Thomas Roche, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y., J. Patrick Glynn, Beverly Sherman Nash, Office of Consumer Litigation, Civ. Div., Dept. of Justice, Washington, D.C., David G. Adams, Jeffrey Freedman, Associate Chief Counsel, Food and Drug Admin., Washington, D.C., of counsel), for appellee.

J. Daniel Mahoney, New York City (Craig P. Murphy, Clifford G. Skibinsky, Windels, Marx, Davies & Ives, New York City, of counsel), for defendants-appellants.

* Honorable Charles E. Stewart, Jr., Senior District Judge, Southern District of New York, sit-

Before PIERCE and PRATT, Circuit Judges, and STEWART, District Judge.*

PIERCE, Circuit Judge:

Gel Spice Company, Inc. (Gel Spice) and Barry Engel, President of Gel Spice, appeal from a judgment of the United States District Court for the Eastern District of New York (McLaughlin, *Judge*), dated December 21, 1984, which found appellants guilty, after a bench trial, on all ten counts of an information charging them with violating the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 342(a)(4).

The district court found that the government did not act in bad faith in conducting inspections of Gel Spice's facilities and that Gel Spice had not made a sufficient preliminary showing to warrant an evidentiary hearing on this issue or to warrant access to certain government documents sought by appellants. The district court also held that appellant Engel did not establish the defense of impossibility. We affirm the decision of the district court.

BACKGROUND

At all relevant times, Gel Spice, a New York corporation, imported, processed, and packaged spices. The processing involved grinding, blowing, sifting, and repackaging the spices into consumer and industrial size containers. Barry Engel has been the President of Gel Spice since 1963 and has been responsible for the purchasing of spices and their storing, processing, and packaging at the company's office and warehouse at 593 McDonald Avenue, Brooklyn, New York. He, his brother Andre S. Engel, Gel Spice's Vice-President, and their mother owned equal shares of Gel Spice and signed checks and documents on behalf of the company.

The Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. § 301 *et seq.*, is enforced by the Food and Drug Administration (FDA). The purpose of the Act is the protection of the public from foods that

ting by designation.

are exposed to unsanitary conditions. The statute requires that foods be produced and held in sanitary facilities. 21 U.S.C. § 342(a)(4). It prohibits distribution of "adulterated" food, which is defined, in part, as food which may have become contaminated with filth, regardless of whether filth is actually found in the food itself. *Id.*

FDA's primary statutory tool to ensure compliance with the Act is the statutory inspection authority granted in 21 U.S.C. § 374. FDA officials and employees are authorized by this provision "to enter, at reasonable times, [after presenting appropriate credentials and a written notice to the owner] any ... establishment in which food [and other regulated products] are manufactured, processed, packed, or held ... and ... to inspect, at reasonable times and within reasonable limits and in a reasonable manner, such ... establishment, [including the facility's] equipment, finished and unfinished materials[,] containers, and labeling." 21 U.S.C. § 374(a)(1). Nothing in 21 U.S.C. § 374 requires FDA to obtain a warrant from a judicial officer.

The Act provides FDA with three principal enforcement mechanisms when it determines that the Act has been violated. The agency can request the United States Department of Justice (DOJ) to initiate a civil seizure action against any food that is adulterated, 21 U.S.C. § 334, seek an injunction to restrain violations of any prohibited act, 21 U.S.C. §§ 331 and 332, or seek to initiate criminal proceedings against any person who commits a prohibited act, 21 U.S.C. §§ 331 and 333.

According to the government, the customary manner in which a legal action is initiated by FDA is as follows:

1. An inspection is conducted by an FDA investigator and a report is prepared.

2. Where inspection reveals violative conditions, the inspection report is referred to the Compliance Branch of the field office for review.

3. The field office may then recommend appropriate regulatory action (including legal action), if any, to the pertinent FDA Bureau, in this case the Bureau of Foods.

4. Where the possible legal action is criminal prosecution, the field office provides the potential defendants with an Opportunity to Present Views, pursuant to 21 U.S.C. § 335, and 21 CFR 7.84 *et seq.* (a Section 305 hearing). The record from the hearing is then reviewed by the field office in determining appropriate legal action, if any.

5. The field [office's] recommended course of action is reviewed by the Bureau. If the Bureau concurs in the recommendation, the matter is then referred for approval to [the] Enforcement Policy Staff.

6. Recommendations for regulatory action, if approved by [that] office, are referred to the Office of General Counsel of FDA for review and approval.

7. If approved by FDA's Chief Counsel, then, *and only then*, is a matter formally referred to Justice (through the appropriate U.S. Attorney) for the institution of legal proceedings.

Appellee's Brief at 7–8.

In June 1972, FDA inspected Gel Spice and found a widespread rodent infestation at the firm. When reinspected in August 1972, there was evidence of a continuing rodent infestation. According to the government, following the June and August 1972 inspections, FDA considered a criminal prosecution against Gel Spice. However, before deciding whether to refer the case to the DOJ, FDA's Chief Counsel requested another inspection to determine current conditions. As a consequence, there was a July 1973 reinspection at which no evidence of rodent infestation was found, and therefore no referral for criminal prosecution was made to the DOJ.

Three years later in July 1976, the FDA inspected Gel Spice and found active rodent infestation. A civil seizure court action was instituted pursuant to 21 U.S.C. § 334

against Gel Spice's foods that were adulterated. In October 1976, FDA held a Section 305 hearing to determine if Gel Spice should be criminally prosecuted based upon the results of the July 1976 inspection. Section 305 hearings afford a person against whom the FDA is contemplating a criminal prosecution "appropriate notice and an opportunity to present his views, either orally or in writing, with regard to such contemplated proceeding" before the matter is referred to the United States Attorney for prosecution. 21 U.S.C. § 335. Following the section 305 hearing during which Gel Spice presented its views, FDA's New York District Office, in February 1977, recommended to the Bureau of Foods that it consider the criminal prosecution of Gel Spice for the July 1976 inspection.

Another inspection of Gel Spice's premises occurred on March 30, 1977. According to the government, this inspection was conducted pursuant to the FDA New York District Office's March 1977 work plans which, based upon several factors, including the prior regulatory history of the firm and the particular commodity manufactured or processed and the risk it presents, identify for each investigator the establishments he is assigned to inspect. This inspection again showed the presence of adulterated food; the FDA initiated another civil seizure action and the District Office again recommended to the Bureau of Foods that Gel Spice be issued a Section 305 hearing notice of possible criminal prosecution arising out of the March 1977 inspection.

Prior to a decision on this request for a hearing, Gel Spice was inspected again on July 6, 1977, allegedly as a result of a report received by FDA's Philadelphia District Office from the United States Defense Personnel Supply Agency. The Supply Agency had received and rejected a shipment of ground cinnamon manufactured by Gel Spice. The cinnamon had been rejected because of animal infestation. This July 1977 inspection revealed still more adulterated foods in Gel Spice's premises. Again, FDA initiated a civil seizure action as to the violative food products.

Thereafter, the District Office held a Section 305 hearing concerning both 1977 inspections. On February 28, 1978, FDA's New York Office submitted its prosecution recommendation based on the two 1977 inspections. The District Office's previous recommendation concerning the July 1976 inspection was still pending at the Bureau of Foods, so that after review of the charges arising out of the three inspections (July 1976, March 1977, and July 1977), on March 22, 1978 the Bureau approved and forwarded a prosecution recommendation to FDA's Enforcement Policy Staff headed by Joseph Hile. Hile approved and forwarded the recommendation to FDA's Chief Counsel. After final review, on September 18, 1978, the Chief Counsel referred the matter to the United States Attorney for the Eastern District of New York for prosecution. The referral covered violations disclosed during the July 1976 and March and July 1977 inspections. Subsequently, in January 1979, again consistent with its regular work plans, another inspection was made of Gel Spice which again revealed active rodent infestation. Following a civil seizure, a § 305 hearing, in which Gel Spice participated, and all the necessary reviews, on November 21, 1979, the FDA's Chief Counsel made a further recommendation to the United States Attorney for prosecution arising out of the January 1979 inspection. The government provided Gel Spice with copies of the inspection reports covering each one of these inspections, all of which were conducted without warrants pursuant to 21 U.S.C. § 374.

By information filed in the Eastern District of New York in December 1980, Gel Spice, Barry Engel, and Andre Engel were charged with causing various spices to become "adulterated", in that the spices were held under unsanitary conditions whereby they became contaminated with filth, within the meaning of 21 U.S.C. § 342(a)(4) (Counts I–X) or that some of the foods consisted in part of a filthy substance by reason of the presence of rodent infestation, within the meaning of 21 U.S.C.

§ 342(a)(3) (Counts I, II, III, and VIII). Proof of either charge establishes a violation of 21 U.S.C. § 331(k), which prohibits the doing of any act or the causing thereof, that results in food becoming adulterated while held for sale after shipment in interstate commerce. Gel Spice and Barry Engel were named in all ten counts, and Andre Engel was named in Counts I through VII. The charges in the information were based on evidence during the four inspections which took place in July 1976, March 1977, July 1977, and January 1979.

On April 9, 1981, Gel Spice filed a motion seeking to suppress evidence and dismiss the information. In support, Gel Spice filed an affidavit by its trial counsel, Jerold W. Dorfman, claiming that the government had obtained the evidence underlying the information in bad faith by using a civil administrative proceeding to obtain evidence for a criminal prosecution. Gel Spice alleged that the FDA had decided to prosecute it in March 1973, following the 1972 inspections, and had actually conducted the four subsequent inspections in question in order to gather evidence in support of that prosecution.

The case was assigned to Judge McLaughlin who, in April 1982, referred the motion to Magistrate Cherin for report and recommendation. Initially, Magistrate Chrein held that Gel Spice had raised sufficient factual questions to require an evidentiary hearing on the issue of the government's bad faith, as Gel Spice had requested. The Magistrate also stated that he would review, in camera, internal FDA memoranda which the government refused to disclose to Gel Spice, citing the investigative records exception of Fed.R.Crim.P. 16(a)(2). In response to the bad faith claim, the government filed the declaration of Joseph Hile, FDA Associate Commissioner for Regulatory Affairs, dated May 15, 1982. The Hile declaration alleged that the "first formal institutional decision to prosecute" Gel Spice was made on September 18, 1978. Based upon this declaration and following an in camera inspection on June 29, 1982, of internal government documents of which discovery was sought by Gel Spice,

the Magistrate changed his mind and concluded that he should not conduct an evidentiary hearing on the issue of the government's bad faith and should not disclose to Gel Spice the internal memoranda of FDA.

After defense counsel objected to the "Magistrate's findings on the ground that Gel Spice had been denied its sixth amendment right of confrontation because the Magistrate relied on documents it had not been allowed to see, the Magistrate asked the parties to submit briefs on the confrontation issue. On December 13, 1982, the Magistrate again changed his mind and entered an Interim Report and Recommendation calling for an evidentiary hearing to take place on January 4, 1983. The issues to be addressed at the hearing were the date upon which the government decided to prosecute Gel Spice and the government's alleged bad faith in pursuing the investigation of Gel Spice. The Magistrate stated that an evidentiary hearing on the bad faith issue was necessary because the Hile declaration was ambiguous as to the reason for a delay between the February 1977 prosecution recommendation by the FDA New York District Office and the September 1978 referral of the Gel Spice matter to the United States Attorney. Moreover, the Hile declaration was held to be ambiguous as to whether the February 1973 prosecution recommendation had been withdrawn or "placed in temporary abeyance," as alleged by appellants.

On December 28, 1982, the government submitted a document entitled "Government's Proffer of Alternative Modes for Showing that Inspections in Question Were Not Undertaken Solely for a Criminal, Evidence-Gathering Purpose." The government proffer contained two statements of FDA employees. A supplemental declaration of Joseph P. Hile asserted that the delay between the District Office recommendation to prosecute Gel Spice in 1977 and the 1978 referral of the matter to the United States Attorney was the result of normal administrative delay. A declaration of Frederick W. Blumenschein, a compli-

ance officer with the FDA, asserted that the 1973 prosecution recommendation was, in fact, withdrawn during that year and not held in abeyance.

On January 4, the Magistrate again reversed himself and decided that Gel Spice was not entitled to a hearing on the issue of the FDA's bad faith since it had "failed to make a substantial preliminary showing of bad faith," sufficient to warrant an evidentiary hearing. In addition, based upon the government's proffer, the Magistrate concluded that September 1978 was the time of the "institutional decision to prosecute" and that inspections before that date were not conducted in bad faith. The district court adopted the Magistrate's Report and Recommendation.

Following a bench trial, on December 21, 1984, Judge McLaughlin found Gel Spice and Barry Engel guilty on all ten counts which charged violations of 21 U.S.C. § 342(a)(4). In view of these findings, the court did not find it necessary to discuss the alleged violations of 21 U.S.C. § 342(a)(3). The court found Andre Engel not guilty on all counts in which he was charged. The Gel Spice corporate defendant was fined a total of $10,000. Barry Engel was sentenced to concurrent terms of two years probation on each count and fined a total of $10,000. This appeal followed.

### DISCUSSION

On appeal, Gel Spice contends that: (1) the FDA acted in bad faith by conducting four inspections, without warrants, pursuant to section 374 of the Act, after having already made a decision to prosecute Gel Spice; (2) Gel Spice was, at a minimum, entitled to an evidentiary hearing on the issue of bad faith; and (3) Gel Spice was improperly denied access to certain government documents. Barry Engel contends that the district court erred in concluding that he had not established the defense of impossibility. We find the arguments made on appeal to be without merit.

■ With regard to Gel Spice's contention of bad faith on the part of the FDA,

we believe that, even when the FDA decides to utilize its criminal enforcement option pursuant to 21 U.S.C. §§ 331 and 333, it may not abandon its civil enforcement responsibilities and it is not thereby prohibited from any further agency surveillance under 21 U.S.C. § 374 pending the conclusion of criminal proceedings. If it were otherwise, anytime a prosecution was undertaken, the FDA would be precluded temporarily in that particular instance from protecting the health and safety of the public, although this function constitutes the main purpose of the Act. As the Supreme Court stated in *United States v. Kordel*, 397 U.S. 1, 11, 90 S.Ct. 763, 769, 25 L.Ed.2d 1 (1970):

> The public interest in protecting consumers throughout the Nation from misbranded drugs requires prompt action by the agency charged with responsibility for administration of the federal food and drug laws. But a rational decision whether to proceed criminally against those responsible for the misbranding may have to await consideration of a fuller record than that before the agency at the time of the civil seizure of the offending products. It would stultify enforcement of federal law to require a governmental agency such as the FDA invariably to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial.

■ We therefore conclude that, even if the FDA were pursuing criminal enforcement of the Act at the time of the inspections in question, standing alone this does not imply or suggest that the inspections were conducted in bad faith.

Furthermore, in our view, Gel Spice's reliance on *United States v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978) is misplaced. In *LaSalle*, the Supreme Court, relying on *Donaldson v. United States*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), held that an Internal Revenue Service (IRS) sub-

poena is valid as long as it is issued in good-faith pursuit of congressionally authorized purposes and prior to any recommendation to the DOJ. *Id.* at 536, 91 S.Ct. at 545. As the government points out, the *LaSalle* Court's rationale for restricting the issuance of IRS subpoenas to the period before referral to the DOJ for criminal prosecution is based on its interpretation of the legislative intent behind Congress' grant of subpoena authority to the IRS, i.e., 26 U.S.C. § 7602. The same rationale is not applicable to the Food and Drug Act provisions at issue herein. For example, at the time of the *LaSalle* decision, 26 U.S.C. § 7602 granted the IRS the power to issue a summons for four purposes only: for "ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or ... collecting any such liability." In contrast, the FDA's food sanitation authority is a general grant "for purposes of enforcement of [the Act]," which Act authorizes criminal prosecution. Moreover, *LaSalle* has been distinguished in several other contexts, e.g., enforcement of subpoenas issued by the Securities and Exchange Commission, *SEC v. Dresser Industries, Inc.,* 628 F.2d 1368, 1377–84 (D.C.Cir.), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980), by the Department of Energy, *United States v. Merit Petroleum Inc.,* 731 F.2d 901, 904–06 (TECA 1984), and by the Equal Employment Opportunity Commission, *In Re E.E.O.C.,* 709 F.2d 392, 398–99 (5th Cir.1983). As the court noted in *United States v. Acklen,* 690 F.2d 70 (6th Cir.1982), with regard to inspections by the Drug Enforcement Administration, *LaSalle* is inapplicable because that case "was decided on the basis of congressional intent behind 26 U.S.C. § 7602, not upon the consideration of the fourth amendment." *Id.* at 74 n. 3. Based on the above, we conclude that the *LaSalle* rule is inapplicable herein.

■ Even if the Court were to apply the *LaSalle* rule to the FDA's inspections of Gel Spice, we believe that the four inspections in question would be found to have been conducted in good faith, i.e., pursuant to a valid administrative scheme and not for the purpose of gathering evidence for a criminal prosecution. In *LaSalle*, the Supreme Court held that the critical time for determining whether a subpoena was issued in good faith is the time of the recommendation to the DOJ. Gel Spice contends that the FDA's consideration of criminal prosecution following the 1972 inspections is the critical time pursuant to *LaSalle*, and that all inspections subsequent to this time were conducted in bad faith, solely to accumulate evidence against them. We are unpersuaded by this argument.

First, after the reinspection in July 1973 which showed no infestation, no recommendation was made to the DOJ. The fact that the district office requested that its recommendation for prosecution be "placed in temporary abeyance" was explained by Blumenschein, in his declaration, to mean only that if further violations should occur sufficient to warrant a recommendation for prosecution, the prior violations could have been resubmitted provided the statute of limitations period had not run. In fact, however, the Bureau of Foods did not hold the matter in "temporary abeyance", but "disapproved the prosecution" of the 1972 violations and "suspended any action" on that prosecution.

Next, as the government notes, this prosecution concerns the July 1976 and subsequent inspections, which the FDA could not have decided to prosecute before the inspections were even made. Therefore, we agree with the district court that, at the time of the FDA inspections conducted in July 1976, March 1977, and July 1977, no institutional decision had been made by FDA to recommend criminal prosecution and that the institutional decision to refer the matter to the DOJ for criminal prosecution did not occur until September 28, 1978. The only inspection that followed this decision was the January 1979 inspection and it is only this inspection for which the inquiry as to good faith is relevant.

As to whether the January 1979 inspection was conducted in good faith, as noted above, the mere existence of a pending recommendation for criminal prosecution to the DOJ does not mean that evidence obtained by the FDA during inspections conducted subsequent to the recommendation was improperly obtained. Civil and criminal enforcement may proceed simultaneously. *Kordel*, 397 U.S. at 11, 90 S.Ct. at 769. Moreover, Magistrate Chrein found that the January 1979 inspection was in fact conducted in good faith, this finding was adopted by the district court and we believe it is supported by the record. The declarations of Hile and Blumenschein show that Gel Spice had a history of noncompliance and therefore that more frequent inspections were justified, and evidence was introduced at trial showing that the 1979 inspection was conducted pursuant to the District Office's work plan and not to further its prosecution recommendation. We therefore agree with the district court's conclusion that the January 1979 inspection was also conducted in good faith.

Gel Spice next contends that, at the least, an evidentiary hearing should have been held on the issue of bad faith, and that it should have been permitted access to the internal agency documents that the Magistrate reviewed in camera.

■ With regard to both the evidentiary hearing and discovery of the documents, we have held that the burden is on defendants to make a "substantial preliminary showing" of bad faith before an evidentiary hearing or even limited discovery is to be held. *United States v. Tiffany Fine Arts, Inc.*, 718 F.2d 7, 14 (2d Cir.1983), *aff'd*, — U.S. ——, 105 S.Ct. 725, 733 n. 7, 83 L .Ed.2d 678 (1985); *United States v. Morgan Guaranty Trust Co.*, 572 F.2d 36, 42–43 n. 9 (2d Cir.), *cert. denied*, 439 U.S. 822, 99 S.Ct. 89, 58 L.Ed.2d 114 (1978). We agree that Gel Spice failed to make a substantial preliminary showing of bad faith.

The only evidence presented to support its argument that the inspections were not conducted pursuant to a valid administrative scheme is the statement made in a summary inspection report and quoted in the affidavit of Jerold W. Dorfman, Gel Spice's counsel, that a decision to prosecute was made in 1973 and "was placed in temporary abeyance." As we have noted, this statement seems to have been adequately explained by the Blumenschein affidavit. Moreover, at no time in 1972 or 1973 was any referral actually made to the DOJ.

■ Furthermore, with regard to Gel Spice's demand to inspect the government documents, the government made no affirmative use of the privileged materials that were submitted in camera. Rather, the documents were submitted solely to rebut Gel Spice's claim that the government improperly obtained evidence in its inspections of Gel Spice. The government's evidence at trial arose from the four separate inspections, reports of which Gel Spice acknowledges it received. As the Supreme Court stated in *McCray v. Illinois*, 386 U.S. 300, 311, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62 (1967), a compulsory disclosure rule is not applied "where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake." Also, Fed.R.Crim.P. 16(d)(1) permits an ex parte showing when a party seeks to prevent the inspection of documents that are alleged to be confidential, and Fed.R.Crim.P. 12(i) permits a court to excise privileged matters from inspection by the defendants. Therefore, in our view, the district court did not abuse its discretion either in denying Gel Spice an evidentiary hearing on the issue of bad faith or in finding that Gel Spice was not entitled to discovery of internal FDA records related to the inspection of the Gel Spice premises beyond those already in their possession.

■ Finally, we conclude that the district court properly found that appellant Barry Engel failed to introduce sufficient evidence to establish the defense of impossibility. With regard to the impossibility defense, the district court stated:

To establish the impossibility defense the corporate officer must introduce evi-

dence that he exercised extraordinary care, but was nevertheless unable to prevent violations of the Act. The defense is raised when defendant introduces sufficient evidence of the exercise of extraordinary care to justify placing an additional burden on the government—that of proving beyond a reasonable doubt that had the defendant indeed exercised such extraordinary care, he could have prevented or corrected those violations. *United States v. New England Grocers Co.*, 488 F.Supp. [230,] 234 [D.Mass. 1980].

According to Engel, *New England Grocers Supply Co.* is not a correct statement of the impossibility defense. He argues that the impossibility defense does not require him to have exercised extraordinary care to prevent the violations of the Act, but rather requires only that he produce some evidence that he was powerless to prevent the contamination and filth. To support his position, Engel relies on *United States v. Park*, 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975), in which the Supreme Court stated that "the Act imposes the highest standard of care and permits conviction of responsible corporate officials who, in light of this standard of care, have the power to prevent or correct violations of its provisions." *Id.* at 676, 95 S.Ct. at 1913.

Even if Engel's interpretation of *Park* were accurate, Engel has still failed to introduce any evidence that he was powerless to prevent the rodent infestation. Indeed, Gel Spice had passed an FDA inspection in 1972 and five other inspections between 1973 and the July 1976 inspection. Therefore, it was clearly possible for Engel to have prevented the infestation. Moreover, in *Park*, the Court stated that the defendant has "not only a positive duty to seek out and remedy violations when they occur but also, and primarily, a duty to implement measures that will insure that violations will not occur." *Id.* at 672, 95 S.Ct. at 1911. Given the "shocking" amount of contamination found on the Gel Spice premises, we conclude that the district court did not err in finding that Gel

Spice had failed to satisfy its duty pursuant to *Park* and that it had not established the defense of impossibility.

We therefore affirm the decision of the district court.