976 F.2d 734
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James ROGERS, Defendant-Appellant.
 No. 91-2209.
 United States Court of Appeals, Sixth Circuit.
 Sept. 9, 1992.
 
 Before DAVID A. NELSON, ALAN E. NORRIS and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant James Rogers, a licensed Michigan pharmacist and owner of Sun Pharmacy, appeals his jury convictions on one count of conspiracy to distribute a controlled substance and twenty counts of distribution of controlled substances outside the course of legitimate pharmacy practice. The government charged that during an eight to nine month period in 1988, defendant knowingly filled twenty-three phony prescriptions for Dilaudid, Tylenol IV, and Percodan. We AFFIRM.
 
 I.
 
 2
 On August 25, 1988, agents of the Federal Bureau of Investigations surveilling an individual named George Thomas, observed him leave Sun Pharmacy, in Mt. Clemens, Michigan. The agents followed him back to Detroit at which time they stopped Thomas's vehicle. Thomas told the agents that he had just returned from Sun Pharmacy and that he purchased 200 Tylenol IV tablets; and that he purchased drugs from Sun Pharmacy on over 100 occasions. He agreed to make a controlled purchase of prescription drugs from Sun Pharmacy.
 
 
 3
 On the morning of September 2, 1988, Thomas made a controlled purchase of 100 Tylenol IV tablets and 100 Percodan tablets. The agents provided Thomas with a prescription for Percodan and ten one hundred dollar bills. Thomas paid the pharmacist seven one hundred dollar bills for the tablets.
 
 
 4
 Shortly thereafter, at approximately 10 a.m., David Wilson served an administrative subpoena at Sun Pharmacy. The agents gave defendant a copy of the subpoena, which required defendant to produce by 11 a.m. that day, any and all prescriptions from January 1985 to the present, and all orders and invoices for Schedule II drugs and DEA 222 for the same period. The agents explained the terms of the subpoena to defendant. Defendant offered no resistance or objection and immediately turned over the requested items. The agents did not inform defendant that he was the subject of a criminal investigation.
 
 
 5
 Defendant provided twenty-three prescriptions for Dilaudid, stating that each one had been brought in by Thomas. Rogers told Barenie that he charged Thomas ten dollars per Dilaudid tablet per four milligram tablet and five dollars per two milligram tablet. He also furnished Barenie with the seven hundred dollar bills that Barenie and Wilson had previously given Thomas.
 
 
 6
 All of the twenty-three prescriptions were written on the prescription pad of Dr. Vashna Gupta, M.D., and made out to the names of five different people. Gupta later testified that she did not write the prescriptions and that the five patients' names were not her patients. Three of the five patients also testified that these were not their prescriptions.
 
 
 7
 At the trial, the government introduced Thomas's confession through Special Agent Wilson. Both Wilson and Thomas testified as to Thomas's numerous dealings with defendant. At the time of trial, Thomas had already pled guilty and entered into a plea agreement with the government whereby he would testify in exchange for a maximum sentence of sixteen months.
 
 
 8
 Rogers was convicted on all counts July 11, 1991, after a jury trial. This appeal followed.
 
 II.
 A.
 
 9
 Defendant argues that the lower court erred in allowing Special Agent Wilson to testify that Thomas, upon his arrest, stated that he had purchased the controlled substances from Rogers; furthermore, that he had purchased pills from defendant on prior occasions. Defendant maintains that the admission of the statements violated his Sixth Amendment right to confrontation as defined in Bruton v. United States, 391 U.S. 123 (1968) and his Fifth Amendment right to a fair trial.
 
 
 10
 Under Bruton, a nontestifying codefendant's incriminating pretrial confession at a joint trial violates the defendant's Sixth Amendment right to confrontation if it similarly implicates the defendant. Bruton, 391 U.S. at 126. See also Richardson v. Marsh, 481 U.S. 200 (1987); Cruz v. New York, 481 U.S. 186 (1987). The right of confrontation includes the right of an accused on a criminal case to cross-examine the witnesses against him. Id; see also United States v. Gomez-Lemos, 939 F.2d 326, 333 (6th Cir.1991) ("[w]ithout cross-examination of a co-conspirator, his confession incriminating a confederate is suspect and generally should not be admitted ..."). In this case, Thomas did testify and was subject to cross-examination by defense counsel. Thus, Bruton is inapplicable.
 
 B.
 
 11
 Defendant also contends that the district court impermissibly admitted "other crimes" under Fed.R.Evid. 404(b), by allowing "evidence that Thomas had illegally purchased prescription drugs from Rogers on over 100 occasions." The government responds that defendant has waived the issue.
 
 
 12
 Challenges to the admission of evidence must state "the specific ground of objection, if the specific ground is not apparent from the context." Fed.R.Evid. 103(a)(1). "This rule serves to ensure that the nature of the error [is] called to the attention of the judge, so as to alert him to the proper course of action and enable opposing counsel to take corrective measures." United States v. Gomez-Norena, 908 F.2d 497, 500 (9th Cir.1990) (quoting Advisory Committee's Note to Rule 103(a), 56 F.R.D. 183, 195 (1972), cert. denied, 111 S.Ct. 363 (1990). A party fails to preserve an objection not only by failing to make a specific objection, but also by making the wrong objection. Id. (emphasis in original); United States v. Schrock, 855 F.2d 327, 332-33 n. 8 (6th Cir.1988).
 
 
 13
 Here defendant objected to Thomas's testimony on a relevancy grounds, not Rule 404(b). Thus, we can only review for plain error. See Fed.R.Evid. 103(a) and (d). Plain error is error that "seriously affects the fairness, integrity on public reputation of judicial proceedings." United States v. Young, 470 U.S. 1 (1985).
 
 
 14
 Although evidence of "other crimes" is inadmissible to prove the character of a person, such evidence may be admitted if it demonstrates "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Fed.R.Evid. 404(b); United States v. Paulino, 935 F.2d 739, 754 (6th Cir.1991). In this case Thomas's testimony was offered to show an ongoing relationship between Thomas and Rogers, as well as the development of a conspiracy.
 
 
 15
 This circuit has repeatedly upheld the admission under Rule 404(b) of acts outside the time period of the indictment for the "legitimate purpose of showing the background and development of a conspiracy." Paulino, 935 F.2d at 755 (quoting United States v. Hitow, 889 F.2d 1573, 1578-79 (6th Cir.1989) (citation omitted); United States v. Passarella, 788 F.2d 377, 383 (6th Cir.1986); United States v. Ismail, 756 F.2d 1253, 1259 (6th Cir.1986). Similarly, we cannot say that the evidence was unduly prejudicial under Fed.R.Evid. 403. See United States v. Simmons, 923 F.2d 934 (2d Cir.1991) (evidence of sale of heroin outside the indictment was admissible under rule 403 as background evidence in narcotics trial where evidence made it more probable that meeting between defendant and third person concerned additional sale of heroin). Finally, the trial court gave a limiting instruction as to the proper use of evidence immediately after the evidence was admitted.
 
 C.
 
 16
 Defendant's next assignment of error relates to the lower court's ruling limiting defendant's cross-examination of Thomas concerning the terms of his plea agreement. The district court allowed defense counsel to cross-examine the witness as to the agreement, but refused to any questioning regarding specific sentencing concessions under the sentencing guidelines.
 
 
 17
 While the Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront hostile witnesses, Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986); the guarantee extends only "an opportunity for effective cross-examination not cross-examination in whatever way, and to whatever extent, the defense might wish." Id. at 679 (quoting Delaware v. Fernsterer, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original)). Thus a trial judge retains wide latitude to impose reasonable limits on such cross-examination. Id. Constitutional error does not occur unless "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had respondent's counsel been permitted to pursue his proposed line of cross-examination." Id. at 680; United States v. Martin, 920 F.2d 393, 396 (6th Cir.1990) (en banc) ("Even in cases where an improper evidentiary ruling limits cross-examination, the test is 'whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory.' " (quoting Dorsey v. Parke, 872 F.2d 163, 167 (6th Cir.), cert. denied, 110 S.Ct. 103 (1989)). This court has also stated that when it is merely the extent of cross-examination that is limited, as opposed to limiting information presented in the jury, the trial judge retains a much wider latitude of discretion. Dorsey, 872 F.2d at 167. A district court's rulings in this regard are reviewed for abuse of discretion, although curtailment of defendant's cross-examination of a "star" government witness "must be more carefully scrutinized." Id. at 166.
 
 
 18
 The record reflects that defense counsel had ample opportunity to cross-examine Thomas. Thomas was questioned about his plea agreement, including the sentence he would receive and the fact that the government would not prosecute his other offenses. Furthermore, the trial court did not limit cross-examination on the extent of the plea agreement, but merely what the guidelines would have been had Thomas pled guilty to the Dilaudid. Finally, defense counsel also questioned Thomas about his previous inconsistent statements and the fact that he lied to the investigating agents when first questioned by them. See United States v. Klauer, 856 F.2d 1147, 1149 (8th Cir.1988). Thus, the jury had sufficient information despite limits on cross-examination, to assess the defense's theory. Martin, 920 F.2d at 396.
 
 
 19
 Finally, even if the court were to find that the trial court improperly limited cross-examination of Thomas, any such error is harmless beyond a reasonable doubt. See Van Arsdall, 475 U.S. at 684 (articulating factors a court should consider in assessing the degree of harm).
 
 D.
 
 20
 Defendant argues that the use of an administrative subpoena pursuant to 21 U.S.C. § 876, rather than a judicial search warrant, violated his Fourth Amendment rights, since he was clearly the "target" of the investigation. Rogers also challenges the district court's finding as to consent.
 
 
 21
 In United States v. Acklen, 690 F.2d 70 (6th Cir.1982), we considered "whether the evidence seized pursuant to an administrative inspection warrant ... should be suppressed ... if the primary purpose of the administrative inspection search was to obtain evidence for criminal prosecution." Id. at 72[1]. We held that the motivation of the agents in serving the administrative warrants was irrelevant in a Fourth Amendment analysis since the agents would be authorized to investigate absent suspicion. Id. at 74-75. United States v. Nechy, 827 F.2d 1161, 1166 (7th Cir.1987); United States v. Gel Spice Co., 773 F.2d 427, 432 (2d Cir.1985); cert. denied, 474 U.S. 1060 (1986); In re Searches & Seizures Conducted on October 2 and 3, 1980, 665 F.2d 775 (7th Cir.1981); see also United States v. Consolidation Coal Co., 560 F.2d 214, 220 (6th Cir.1977), (mining industry), vacated and remanded, 436 U.S. 942 (1978) (for further consideration in light of Marshall v. Burlow's Inc. and Michigan v. Tyler ), judgment reinstated, 579 F.2d 1011 (6th Cir.1978), cert. denied, 439 U.S. 1069 (1979); United States v. Goldfine, 538 F.2d 815, 818-19 (9th Cir.1976) (citing Colonnade Catering Corp. v. United States, 410 F.2d 197, 205 (2d Cir.1969), rev'd on other grounds, 397 U.S. 72 (1970)). The Acklen court reasoned that the pharmaceutical industry, "is a pervasively regulated industry and consequently pharmacists and distributors subject to the Controlled Substances Act have a reduced expectation of privacy in the records kept in compliance with the Act." Id.[2] Therefore, the traditional judicial probable cause requirement did not apply to administrative warrants.
 
 
 22
 Although Acklen involved administrative warrants which require some level of probable cause, as opposed to the § 876 administrative subpoena at issue here which requires merely a finding of relevancy versus materiality, the distinction does not require a different result under the rationale of Acklen, since the agents were clearly permitted to execute the subpoena absent suspicion. Thus, all that is relevant is "the scope of the search and the manner in which it is conducted." Acklen, 690 F.2d at 74. The record reflects that the agents limited their request to the materials listed on the subpoena. They did not conduct a search and took nothing outside the items listed in the subpoena. The district court found that Rogers personally retrieved the items and did not object. Rogers was under no legal compulsion to comply with the administrative subpoena. It is well established that absent intervention by a court, production of items listed in an administrative subpoena is not legally compulsory. See Richard A. Vaughn, DDS, P.C. v. Baldwin, 950 F.2d 331, 333 (6th Cir.1991), and cases there cited.
 
 
 23
 As for consent to the search, defendant maintains that the record does not support the district court's finding that Rogers gave his consent to the officers. Further, defendant contends that consent to a subpoena cannot be transferred to a consent to search.
 
 
 24
 As to defendant's legal contention, we note that the Supreme Court has refused to hold that the knowledge of a right to refuse is an essential element of an effective consent. See Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973); United States v. Susskind, 965 F.2d 80 (6th Cir.1992). Thus, it has been held that the mere fact that agents secured records after presenting a subpoena, without specifically informing the defendant of his legal rights regarding the subpoena, is not determinative, but merely the factor in the totality. Susskind; United States v. Allison, 619 F.2d 1254 (8th Cir.1980); see also Consumer Credit Ins. Agency v. United States, 599 F.2d 770 (6th Cir.1979), cert. denied, 445 U.S. 903 (1980) (upholding forthwith grand jury subpoena duces tecum against a Fourth Amendment challenge).
 
 
 25
 Furthermore, the trial court's finding of consent is supported by the record. Agent Barenie testified that Rogers consented to cooperate from the outset; voluntarily handed the agents money used in the controlled purchase, voluntarily retrieved the items listed on the subpoena, and freely discussed his involvement in illegal activities. Thus, upon review, it cannot be said that the lower court's finding is clearly erroneous. Schneckloth, 412 U.S. 218.
 
 E.
 
 26
 Lastly, defendant asserts that the trial court erred as to the degree of the downward departure from the sentencing guidelines. Specifically defendant maintains that the district court should have departed further than eight months, because the guideline range was determined by the total weight of the Dilaudid tablets, rather than the weight of the active ingredients alone.
 
 
 27
 Defendant has waived this issue on appeal. At sentencing, defendant argued only that the court should consider the weight of the active ingredient alone in determining the appropriate guideline range and made no similar objection regarding a downward departure. See Fed.R.Evid. 103(4); Fed.R.Crim.P. 51; Schrock, 855 F.2d at 332-33 n. 8.
 
 
 28
 In any event, defendant's position has been squarely rejected by both the Supreme Court and this circuit. United States v. Chapman, 111 S.Ct. 1919, 1925 (1991) (blotter paper used to distribute LSD is a "mixture or substance containing a detectable amount" of LSD, since like cocaine or heroin mixed with cutting agents LSD cannot be distinguished or easily separated from it; therefore total weight is to be used for sentencing purposes); United States v. Williams, 894 F.2d 208, 214-15 (6th Cir.1990) (in measuring the quantity of cocaine under sentencing guidelines, the entire mixture was considered, despite the fact that amount was only 87% pure cocaine); see also Andress, 943 F.2d 622 (6th Cir.1991) (weight of blotter paper as well as pure LSD included for purposes of calculating guidelines sentence); United States v. Elrod, 898 F.2d 60 (6th Cir.) (same) cert. denied, 111 S.Ct. 104 (1990); cf. United States v. Jennings, 945 F.2d 129 (6th Cir.1991) (a crockpot containing a small amount of methamphetamine and poisonous by-products could only be weighed relative to the amount of methamphetamine intended for ingestion); clarified by, 966 F.2d 184 (6th Cir.1992). While Section 2D1.1 of the Sentencing Guidelines provides for exceptions, Dilaudid is not listed as one.
 
 
 29
 For all the foregoing reasons, defendant's conviction is AFFIRMED.
 
 
 
 [1]
 United States v. Herrington, 761 F.2d 1482 (11th Cir.1985), cited by defendant, is distinguishable from Acklen and the instant case because it concerned administrative subpoenas issued to third parties post indictment
 
 
 [2]
 Given this holding in Acklen, defendant's reliance on United States v. Lawson, 502 F.Supp. 158 (M.D.1980) and United States v. Anile, 352 F.Supp 14 (N.D.W.Va.1973), which both involve the use of administrative warrants, is misplaced