# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 24, 2012 Session

## PUBLIX SUPER MARKETS, INC. v. TENNESSEE DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT, LABOR STANDARDS DIVISION

**Appeal from the Chancery Court for Davidson County**
**No. 11211-I     Claudia Bonnyman, Chancellor**

---

**No. M2012-00089-COA-R3-CV - Filed November 16, 2012**

---

This is an administrative appeal in which an employer challenges the decision of the Tennessee Department of Labor & Workforce Development finding the employer in violation of the Tennessee Child Labor Act for failing to furnish, within one hour of demand, personnel files of each of its minor employees. The trial court affirmed the decision of the Department and this appeal followed. Tennessee Code Annotated § 50-5-111(1) & (4) require employers to "make, keep and preserve a separate and independent file record for each minor employed, which shall be kept at the location of the minor's employment" and to "furnish" the records relative to the minor employees. On appeal, the employer contends it maintained the records on site as required, thus it did not violate Subsection (1) of the statute. The employer also asserts that it has a Fourth Amendment right to object to a warrantless search by the Department and it may not be penalized for asserting its constitutional right. We have determined the Department's decision to assess penalties for violating Subsection (1) of Tennessee Code Annotated § 50-5-111 is not supported by substantial and material evidence and the inference drawn by the Department that the records were not maintained on site based upon a mere inference drawn from the fact they were not produced within one hour of demand is insufficient. Therefore, the assessments for allegedly failing to maintain personnel records of minor employees on site is reversed. As for the requirement under Subsection (4) of Tennessee Code Annotated § 50-5-111 that employers of minor employees furnish and allow inspection of the separate and independent file records for each minor employed upon request by the Department, the Act expressly provides that if the Department is denied permission to make an inspection, Tennessee Code Annotated § 50-4-101 provides that the Department employee or official may obtain an administrative inspection warrant in accordance with the procedures outlined in the statute; the Department did not seek to obtain a warrant in this case. As for refusing the Department's request to inspect the records without an administrative warrant, in order for a warrantless search or

inspection to be constitutionally permissible under the Fourth Amendment, the Department must establish that the employer was part of a pervasively regulated industry or that the employer had weakened or reduced privacy expectations that are significantly overshadowed by the Department's interests in regulating the employer's industry. We have determined the Department failed to establish either; accordingly, the Department cannot assess a penalty against an employer for asserting its constitutional rights under the Fourth Amendment. Thus, the penalty assessed for allegedly violating Subsection (4) of the statute is reversed. Pursuant to the foregoing, we remand with instructions for the trial court to order the Department to vacate the citations and penalties against the employer.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which RICHARD H. DINKINS, J., joined. ANDY D. BENNETT, J., filed a separate concurring opinion.

William S. Rutchow and Wendy V. Miller, Nashville, Tennessee, for the appellant, Publix Super Markets, Inc.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; Alex Rieger and Lindsey O. Appiah, Assistant Attorney Generals, for the appellee, Tennessee Department of Labor and Workforce Development, Labor Standards Division.

**OPINION**

On April 28, 2008, an Inspector with the Tennessee Department of Labor & Workforce Development (the "Department") performed a random, unannounced inspection of a Publix grocery located in Chattanooga, Tennessee. During the inspection, the Inspector requested access to the minor employees' employment files and time cards. The Publix assistant manager responded to the Inspector stating that the records were on site, however, it was Publix's policy for the Department to contact Publix's Human Resources Manager in advance to make an appointment to review the records. The Inspector demanded that the records be provided within one hour or a citation would issue. The assistant manager stated that the records would not be provided until the Publix's Human Resources Manager was contacted. The Inspector then issued an inspection report citing Publix for one violation of the Child Labor Act for each minor who was employed at the store.

The following day, on April 29, Publix furnished to the Department all of the statutorily required minor employees' personnel records.

The Department sent a formal notice of violations to Publix on May 29, 2008, in which it cited Publix with fourteen violations, one for each minor employee, of the Tennessee Child Labor Act, Tennessee Code Annotated § 50-5-101, *et seq*. Specifically, the Department cited Publix for violating subsections 50-5-111(1)(A)-(B), -111(4). A total fine of $14,000 was assessed against Publix, $1,000 for each violation, which was the maximum penalty that could be assessed.

Publix requested an informal conference to review the citations and fine. The conference occurred on July 23, 2008. On July 29, 2008, the Commissioner's Designee affirmed the $14,000 assessment. Thereafter, Publix requested a contested case hearing, which occurred on October 19 and December 19, 2010. Following the hearing, the Commissioner's Designee issued an opinion affirming each of the fourteen violations, but reducing the penalty from $14,000 to $4,200. The Commissioner's Designee stated that at minimum Publix was in violation of the statute because the Inspector was never able to verify that Publix kept the minor employees' personnel records at the employment location, which is a requirement of the Child Labor Act. The Designee noted that the Child Labor Act itself was silent on the time period to produce such records for inspection, however, it was the practice of the Department to require the immediate production of such records when requested by an inspector. Nevertheless, the Designee reduced the fine from $14,000 to $4,200 because there was insufficient evidence to support the maximum penalty of $1,000 for each violation, but noted Publix was a sophisticated business with "several prior experiences" in child labor law inspections.[1]

On February 15, 2011, Publix filed a Petition for Judicial Review in the Davidson County Chancery Court under the Uniform Administrative Procedures Act contending the Department's decision violated constitutional and statutory provisions, exceeded the agency's statutory authority, was made upon "unlawful procedure," and was arbitrary, capricious, or an abuse of discretion. Following a hearing, the trial court affirmed the Department's decision in its entirety including the penalty assessment. The order incorporated by reference a transcript of the court's ruling from the bench.

Publix filed this appeal to challenge the trial court's decision to affirm the Department arguing that the Department's decision is unsupported by evidence in the record, violates its Fourth Amendment rights under the United States Constitution, is based upon an invalid and unlawful "policy" that was adopted in contravention of the Uniform Administrative Procedures Act, and was arbitrary and capricious.

---

[1]Publix contends this was a reference to a 2006 citation issued by the Department that was subsequently withdrawn.

## STANDARD OF REVIEW

Judicial review of decisions of administrative agencies, when those agencies are acting within their area of specialized knowledge, experience, and expertise, is governed by the narrow standard contained in Tennessee Code Annotated § 4-5-322(h) rather than the broad standard of review used in other civil appeals. *Willamette Indus., Inc. v. Tennessee Assessment Appeals Comm'n*, 11 S.W.3d 142, 147 (Tenn. Ct. App. 1999) (citing *Wayne Cnty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279-80 (Tenn. Ct. App. 1988)).

The trial court may reverse or modify the decision of the agency if the petitioner's rights have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1)      In violation of constitutional or statutory provisions;
(2)      In excess of the statutory authority of the agency;
(3)      Made upon unlawful procedure;
(4)      Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(5)(A) Unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 4-5-322(h)(1)-(5)(A). However, the trial court may not substitute its judgment concerning the weight of the evidence for that of the Board as to questions of fact. Tenn. Code Ann. § 4-5-322(h)(5)(B); *see also Jones v. Bureau of TennCare*, 94 S.W.3d 495, 501 (Tenn. Ct. App. 2002). The same limitations apply to the appellate court. *See Humana of Tenn. v. Tenn. Health Facilities Comm'n*, 551 S.W.2d 664, 668 (Tenn. 1977) (holding the trial court, and this court, must review these matters pursuant to the narrower statutory criteria). Thus, when reviewing a trial court's review of an administrative agency's decision, this court is to determine "whether or not the trial court properly applied the . . . standard of review" found at Tennessee Code Annotated § 4-5-322(h). *Jones*, 94 S.W.3d at 501 (quoting *Papachristou v. Univ. of Tenn.,* 29 S.W.3d 487, 490 (Tenn. Ct. App. 2000)).

## ANALYSIS

### TENNESSEE CHILD LABOR ACT, TENNESSEE CODE ANNOTATED § 50-5-101, *ET SEQ.*

The Department is required by statute to administer and enforce the provisions of the Child Labor Act. *See* Tenn. Code Ann. § 50-5-110 ("The department shall administer and enforce this part."). In furtherance of this mandate, the Department is to, *inter alia*, provide

employers of minors with the regulations governing the employment and hours of work of minors, inspect all places where minors may be employed and all pertinent records of employment at "any reasonable time" and "as often as necessary to effectively enforce this part," and notify any person charged with a violation of this part as to the nature of the violation. *Id.*

The duties of employers of minors appear in Tennessee Code Annotated § 50-1-111, which provides that "[e]mployers of minors subject to regulation under this part shall:"

(1) Make, keep and preserve a separate and independent file record for each minor employed, which shall be kept at the location of the minor's employment and shall include:

(A) An employment application;
(B) A copy of the minor's birth certificate or other evidence of the minor's age as provided in § 50-5-109;
(C) An accurate time record showing the hours of the minor's beginning and ending of work each day if the minor is one subject to § 50-5-104 or § 50-5-105; and
(D) Any records required under § 50-5-107(8)-(14).

(2) Allow the department to inspect, during regular working hours, any and all premises where minors are or could be employed and the contents of the individual file records specified in subdivision (1);

(3) Post and maintain in a conspicuous place on the business premises a printed motive, furnished by the department, stating the regulations governing the employment and hours of work of minors and employment prohibited to minors under this part; and

(4) Furnish to the department records relative to the employment of minors.

Tenn. Code Ann. § 50-5-111(1)-(4). Penalties the Department may assess against an employer that violates the above provisions are in Tennessee Code Annotated § 50-1-112.

The Department assessed penalties in the amount of $14,000, which was later reduced to $4,200, against Publix for failing to furnish the minor employees' personnel records within one hour of the request by the Inspector and for failing to maintain records for each minor employed at the location of the minor's employment. The assessment was imposed for violating subsections (1) and (4) of Tennessee Code Annotated § 50-1-111, and a Department

"operational policy" that required employers to furnish the personnel records within one hour. We discuss the scope, applicability, and validity of the statutory provisions and the Department operational policy below.

### A. Subsection (1) of Tennessee Code Annotated § 50-5-111
### Maintaining the Records On Site

Publix contends it proved that it maintained the required records on site as required by subsection (1) of Tennessee Code Annotated § 50-5-111 and the record lacks substantial and material evidence to support the Department's decision that it violated subsection (1).

When determining whether there was substantial and material evidence to support an agency's decision, a "reviewing court should not apply Tenn. Code Ann. § 4-5-322(h)(5)'s "substantial and material evidence" test mechanically. *Jackson Mobilphone Co., Inc. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 110-111 (Tenn. Ct. App. 1993).

> Instead, the court should review the record carefully to determine whether the administrative agency's decision is supported by "such relevant evidence as a rational mind might accept to support a rational conclusion." *Clay County Manor v. State Dep't of Health & Env't*, 849 S.W.2d 755, 759 (Tenn. 1993); *Southern Ry. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984). The court need not reweigh the evidence, *Humana of Tennessee v. Tennessee Health Facilities Comm'*, 551 S.W.2d 664, 667 (Tenn. 1977), and the agency's decision need not be supported by a preponderance of the evidence. *Street v. State Bd. of Equalization*, 812 S.W.2d 583, 585 (Tenn. Ct. App.1990). The evidence will be sufficient if it furnishes a reasonably sound factual basis for the decision being reviewed. *Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279 (Tenn. Ct. App.1988).

*Id.* at 111.

Publix insists there is no evidence that Publix did not maintain its records on site and it contends the undisputed facts demonstrate that it maintained the requisite records and they were on site when requested by the Inspector. The record does not contain any direct evidence that Publix failed to maintain the required records on site and the Publix employee informed the Inspector the records were maintained on site and that she would be able to view them, but the Inspector must first contact Publix's human resources manager to view the records. As further evidence that it maintained the records on site as required, Publix points to the fact that it furnished the records to the Department the following day. For its part, the Department asserts there is no proof that the records were maintained on site and

-6-

Publix's failure to provide the records within one hour of its request creates the inference that the records were not kept on site and were not on site on April 28, 2008, when they were requested.

Based upon the record before us, we have concluded that the Department's decision to assess penalties for violating subsection (1) of Tennessee Code Annotated § 50-5-111 is not supported by substantial and material evidence and the inference drawn by the Department that the records were not maintained on site based upon a mere inference drawn from the fact they were not produced within one hour of demand is insufficient. Therefore, the assessments for allegedly failing to maintain personnel records of minor employees on site is reversed.[2]

### B. Subsection (4) of Tennessee Code Annotated § 50-5-111
### Timing of the Department Inspection

The Department assessed penalties against Publix finding that Publix violated Subsection (4) of Tennessee Code Annotated § 50-5-111 because it failed to furnish the required records to the Department within one hour of its request. Publix contends it did not violate Tennessee Code Annotated § 50-5-111(4) because neither the statute nor regulation provides a time limit and it furnished the required records to the Department the day after they were requested. The Department does not dispute the fact that Publix furnished the records required under subsection (4); nevertheless, the Department asserts that Publix violated Tennessee Code Annotated § 50-5-111(4), because it did not furnish the records within one hour of the Inspector's request.

As Publix asserts, no statute or regulation provides a time period within which the employment records of minor employees shall be provided to the Department. However, the Child Labor Act is designed to prevent the overworking of minors, the employment of minors in dangerous occupations, and the employment of minors when they should be in school. *See* Tenn. Code Ann. §§ 50-5-103-106. Further, Tennessee Code Annotated § 50-5-110(2) commands the Department to inspect "all pertinent records of [the minors'] employment, at any reasonable time, and as often as necessary to enforce this part" and Tennessee Code Annotated § 50-5-111(2) requires the employer to allow the Department to inspect the records "during regular working hours." "[S]tatutes 'in pari materia' those relating to the same subject or having a common purpose are to be construed together, and the construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of another statute." *Wilson v. Johnson Cnty.*, 879

---

[2]Publix was not cited for a violation of Tennessee Code Annotated § 50-5-111(2), for its failure to provide the Inspector with access to the personnel files of minor employees during "regular business" hours.

S.W.2d 807, 809-10 (Tenn. 1994) (citing *Belle-Aire Village, Inc. v. Ghorley*, 574 S.W.2d 723, 725 (Tenn. 1978); *Spence v. Miles Labs., Inc.*, 801 F.Supp. 952 (E.D. Tenn. 1992)); *see also Worrall v. Kroger Co.*, 545 S.W.2d 736, 738 (Tenn. 1977). Moreover, a statute will not be interpreted so that the results would defeat the purpose of the statute. *Tidwell v. Collins*, 522 S.W.2d 674, 676 (Tenn. 1975).

Reading the above sections in pari materia, the Department's inspections are only limited to a reasonable time during "regular working hours" of the employer. The Department adopted an internal "policy" that appears in the Department's Operational Policy and Training Manual, which provides that the Inspector shall give the employer up to one hour to furnish the requested records and, if the employer fails to comply, a citation shall issue for the failure to allow a timely inspection of the records. We are unable to conclude that this "policy" is an unreasonable interpretation of the relevant sections of the statute.

Publix contends that it did not violate Tennessee Code Annotated § 50-5-111(4) because it furnished the required records to the Department the day after they were requested. The Department does not dispute the fact that Publix provided the records required under subsection (4); nevertheless, the Department asserts that Publix violated Tennessee Code Annotated § 50-5-111(4), because it did not furnish the records within one hour of the Inspector's request.

The Department's policy of requiring the production of the records within an hour of the request has no real bearing upon this issue of timeliness, for it is merely a "policy" that serves as a courtesy to employers to allow a limited period of time to produce the records; it is a direction to its inspectors, nothing more.

Because the statute implicitly requires immediate inspection upon request, unless it has a defense under the Fourth Amendment prohibition against unreasonable searches and seizures, Publix violated Tennessee Code Annotated § 50-5-111(4) by failing to furnish the records immediately upon request. Consequently, we shall analyze Publix's Fourth Amendment defense.

## C. Publix's Fourth Amendment Defense

Publix contends the Department's imposition of a penalty against employers who do not consent to "immediate" inspections and production of records is unconstitutional in that it violates the Fourth Amendment prohibition against unreasonable searches and seizures. In response, the Department argues that the grocery business is a highly regulated industry, therefore, there is a lowered expectation of privacy and the strict standards of the Fourth Amendment do not apply.

The Sixth Circuit Court of Appeals issued a detailed opinion in 1988 on the issue of administrative searches and the Fourth Amendment in *McLaughlin v. Kings Island, Div. of Taft Broad. Co.*, 849 F.2d 990 (6th Cir. 1988). The facts in *McLaughlin* are strikingly similar to this case. On September 1, 1982, an OSHA compliance officer went to Kings Island theme park to conduct an investigation based upon an employee health complaint related to the fog used at the theme park during a theatrical performance. *Id*. at 991-92. While at Kings Island, an OSHA officer requested permission to inspect the theme park's OSHA Form 200s for the three previous years, which is a log and summary of all reportable occupational injuries and illnesses of the establishment, and which are required to be maintained by the Occupational Safety and Health Act, 29 U.S.C. §§ 651-78, and federal regulations promulgated pursuant to the Act. *Id*. at 992-993. The OSHA officer did not present an administrative warrant or search warrant. *Id*. at 992. Kings Island informed the officer that it would consent to an inspection of the premises and records limited to the scope of the employee complaint regarding the fog, but would not produce any additional records for examination without a search warrant or legal process. *Id*. Following the refusal, the Secretary of Labor issued a citation to Kings Island for failure to provide the records upon request. *Id*. Kings Island contested the citation and an administrative law judge affirmed the decision finding Kings Island in violation of the Act for failing to produce the records. *Id*. Upon petition for review, the Occupational Safety and Health Review Commission reversed the decision holding that the regulations violated the Fourth Amendment "to the extent that it purports to authorize an inspection of business records without a warrant or its equivalent" and the Commission vacated the citation. *Id*. The Secretary of Labor petitioned the Sixth Circuit Court of Appeals for review of the Commission's decision. *Id*.

In *McLaughlin*, the court noted that the Occupational Safety and Health Act was "enacted 'to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve human resources.'" *Id*. (quoting 29 U.S.C. § 651(b)). In order to enforce the provisions of the Act, the Act requires compliance with certain reporting procedures, requiring each employer to "'make, keep and preserve, and make available to the Secretary . . . such records regarding his activities relating to [the Act]' as the Secretary 'may prescribe by regulation as necessary or appropriate for the enforcement of [the Act] or for developing information regarding the causes and prevention of occupational accidents and illnesses.'" *Id*. (quoting 29 U.S.C. § 657(c)(1)) (alternations in original). Regulations promulgated under the Act further require a more detailed supplementary record, which must be "available for inspection." *Id*. at 993 (quoting 29 C.F.R. § 1904.4). An additional regulation provides that the records must be provided "upon request." *Id*. (citing 29 C.F.R. § 1904.7(a)). The OSHA Operations Manual permitted access to the records by a subpoena or warrant, but did not require the use of either type of legal process. *Id*. The OSHA Operations Manual further provided that failure of the employer to provide the records required upon request would result in a citation. *Id*.

The Sixth Circuit then turned to the issue of whether a search warrant or its equivalent is required before the nonconsensual search of an employer's occupational health and safety records. *Id*. at 993. The court held that the regulations, insofar as they allow such a nonconsensual search, were in violation of the Fourth Amendment of the United States Constitution. *Id*. In reaching its holding, the Sixth Circuit looked to the United States Supreme Court's holdings regarding administrative searches and the Fourth Amendment.

> In *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), the Supreme Court held that like the search of a private home, the search of a business is presumptively unreasonable if conducted without a warrant, as a businessman's Fourth Amendment guarantees are 'placed in jeopardy if the decision to enter and inspect for violation of regulatory laws can be made and enforced by the inspector in the field without official authority evidenced by a warrant." *Id*. at 543, 87 S.Ct. at 1739.

*Id*. at 993. The court went on to note that "a warrant is not always required, as an administrative subpoena, sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome, will be adequate in certain situations." *Id*. (citing *See*, 387 U.S. at 544-45). The court further acknowledged that the privacy interest by an owner or operator of a business is different from, "and indeed less than, a similar expectation in an individual's home." *Id*. (quoting *New York v. Burger*, 107 S.Ct. 2636, 2642, 482 U.S. 691 (1987)). This lessened privacy interest has resulted in an exception to the warrant requirement for searches of "pervasively or closely regulated industries." *Id*. at 993-94 (citing *Burger*, 107 S.Ct. 2636 (junkyard industry); *Donovan v. Dewey*, 452 U.S. 594 (1981) (coal mining); *U.S. v. Biswell*, 406 U.S. 311 (1972) (firearms); *Colonnade Catering Corp. v. U.S.*, 397 U.S. 72 (1970) (liquor); *U.S. v. Acklen*, 690 F.2d 70 (6th Cir. 1982) (pharmacies); *Marshall v. Nolichuckey Sand Co.*, 606 F.2d 693 (6th Cir. 1979) (sand and gravel industry)). The court discussed the rationale behind the exception for highly regulated industries further:

> The rationale for the pervasively regulated industry exception to the warrant requirement stems from the fact that those "industries have such a history of government oversight that no reasonable expectation of privacy could exist for a proprietor over the stock of such an enterprise." *Barlow's*, 436 U.S. at 313, 98 S.Ct. at 1821 (citation omitted). Since the owners or operators of such industries have "a reduced expectation of privacy, the warrant and probable-cause requirements, which fulfill the traditional Fourth Amendment standard

of reasonableness for a government search, have lessened application...."
*Burger*, [482 U.S. at 702] (citation omitted).

*Id*. at 994.

However, *McLaughlin* noted that the "pervasively regulated industry exception is
limited." *Id*. The court found that the industries affected by OSHA are not by definition
pervasively regulated. *Id*. (citing *Barlow's*, 436 U.S. at 315). The court further acknowledged
that even if the industry is not pervasively regulated, the warrant exception may apply
"wherever 'the privacy interests of the owner are weakened and the government interests in
regulating particular businesses are concomitantly heightened.'" *Id*. (quoting *Burger*, 482
U.S. at 702). In order for the warrantless search or inspection to be constitutionally
acceptable, however, three criteria must be met:

> First, there must be a "substantial government interest that informs the
> regulatory scheme pursuant to which the inspection is made.
>
> Second, the warrantless inspections must be "necessary to further [the]
> regulatory scheme."
>
> Finally, "the statute's inspection program, in terms of the certainty and
> regularity of its application, [must] provid[e] a constitutionally adequate
> substitute for a warrant." In other words, the regulatory statute must perform
> the two basic functions of a warrant: it must advise the owner of the
> commercial premises that the search is being made pursuant to the law and has
> a properly defined scope, and it must limit the discretion of the inspecting
> officers."

*Id*. (quoting *Burger*, 482 U.S. at 702-703) (alterations in original).

Because *McLaughlin* held that Kings Island was not part of a pervasively regulated
industry, for the court to determine whether or not a warrantless inspection was
constitutionally acceptable, the government had to first overcome the presumption of
unreasonableness by showing that "the owner has weakened or reduced privacy expectations
that are significantly overshadowed by government interests in regulating the particular
industry or industries." *Id*. at 994. In *McLaughlin*, the Secretary of Labor argued that the
government had met this threshold because Kings Island had no significant privacy interest
in the records in question because there is only a minimal expectation of privacy in records
required by law to be maintained and produced upon request. *Id*. at 995. The court
acknowledged that "where agencies have sought to obtain required records for legitimate

investigatory purposes, courts have repeatedly upheld access on request on both periodic and nonperiodic bases." *Id*. (citing *California Bankers Ass'n v. Shultz*, 416 U.S. 21 (1974); *U.S. v. Morton Salt Co.*, 338 U.S. 632 (1950)). However, the court found that *McLaughlin* involved "an unannounced inspection accompanied by an arbitrary and discretionary demand to inspect company records not only as they relate to a specific complaint, but for hygienic and environmental problems in general." *Id*. at 995. The court found the situation distinguishable from situations where access had been allowed because it was not:

> [A] constructive search conducted pursuant to some previously issued legal process. *See Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 195, 66 S.Ct. 494, 498, 90 L.Ed. 614 (1946) (constructive search is one conducted pursuant to court order "after adequate opportunity to present objections.") It does not involve a contested search warrant, *Acklen*, 690 F.2d at 72; an administrative subpoena, *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 104 S.Ct. 769, 78 L.Ed.2d 567 (1984); access by injunction or court order mandating that Kings Island produce the requested records, *Cooper's Express, Inc. v. ICC*, 330 F.2d 338 (1st Cir.1964); a pervasively regulated industry, *United States v. Blue Diamond Coal Co.*, 667 F.2d 510 (6th Cir.1981) (coal mining), *cert. denied,* 456 U.S. 1007 (1982); a regulatory reporting requirement, *Shultz, supra; Morton Salt, supra;* or access pursuant to any consent order or contract with the federal government which required submittal of the information. *First Alabama Bank of Montgomery v. Donovan*, 692 F.2d 714 (11th Cir. 1982).

*Id*. at 995. The court further noted that "the concept of 'required records' is not synonymous with the absence of a privacy interest." *Id*. (citing *Brock v. Emerson Elec. Co.*, 834 F.2d 994 (11th Cir. 1987) (holding employers have a recognizable privacy interest in records in question, even though the employer is required by law to keep them)). The court further found significant the fact that OSHA compliance officers were given the option of gaining access to the records through either a warrant or a subpoena, or through citation upon an employer's refusal to allow inspection. *Id*. at 996. The court found that:

> The Fourth Amendment requires that the employer have some notice and opportunity to be heard to challenge the reasonableness of the agency request. While an "agency has the right to conduct all reasonable inspections of such documents which are contemplated by statute, . . . *it must delimit the confines of a search by designating the needed documents in a formal subpoena*." *See*, 387 U.S. at 544, 87 S.Ct. at 1740.

*Id*. (emphasis in original).

The court in *McLaughlin* acknowledged the Secretary of Labor's argument that requiring a warrant or subpoena would be overly burdensome for both the agency and for the federal courts who would have to rule on routine applications and motions to enforce or quash, but found that "absent a showing that warrantless inspections are necessary for reasonable enforcement of the Act, the Fourth Amendment will not tolerate such warrantless intrusion." *Id*. at 997. The court further found that the Secretary had failed to establish the regulations promulgated  under the Act were an adequate substitute for a warrant. *Id*. The court found this despite the procedural safeguard in the regulations that no monetary penalty for the failure to provide the required records could be imposed prior to a determination by the Commission that the citation was reasonable. *Id*. The court therefore held that "[a]t a minimum, . . . an evaluation should take place prior to any search or citation issued for refusal of a search. An employer may not be threatened with a penalty for asserting his Fourth Amendment rights." *Id*. (citing *Emerson*, 834 F.2d at 997).

Applying the framework established by the United States Supreme Court in *Burger* and as applied in *McLaughlin*, we now address the argument that the Department's requirement the records be provided immediately upon request does not violate the Fourth Amendment. The Department asserts that this is a pervasively regulated industry, however, the Department cites to no authority or facts to support this contention. We find nothing to indicate the retail grocery industry is pervasively regulated. Thus, for this court to determine whether or not a warrantless inspection is constitutionally acceptable, the Department must overcome the presumption of unreasonableness by showing that Publix has a weakened or reduced privacy expectation that is significantly overshadowed by government interests in regulating the particular industry or industries. *McLaughlin*, 849 F.2d at 995.

In support of its contention that the documents must be produced within one hour of request, the Department solely relies upon the fact that the Child Labor Act requires an employer to maintain and produce such records.[3] This justification and reasoning, however, was flatly rejected by the Sixth Circuit in *McLaughlin*. "[T]he concept of 'required records is not synonymous with the absence of a privacy interest." *Id*. at 995. We further note that there are no procedural safeguards in the regulations promulgated pursuant to the Child Labor Act, because the "one hour courtesy" given by the Department is not a regulation promulgated pursuant to the UAPA, but is instead merely a policy contained within the Department's manual.

Although the Child Labor Act provides the Department with the authority to request inspection and production of documents, this authority does not in and of itself permit an

---

[3]We further note that the Department's brief does not make any reference to the three criteria required to be met in order for warrantless inspections to pass constitutional muster.

inspection that is not in accord with the Fourth Amendment. To the contrary, the Child Labor Act provides the mechanisms and protections afforded by the Fourth Amendment. For example, if an employee or official of the Department is denied permission to make an inspection and a warrant is required by the constitution of the United States or the state, Tennessee Code Annotated § 50-4-101 provides that the Department employee or official may obtain an administrative inspection warrant in accordance with the procedures outlined in the statute. In this case, however, the Department did not pursue the recourse provided by the Child Labor Act and Publix did not refuse the Department access to the records, it merely requested the Inspector contact the human resources department to set up a time for the records to be provided and Publix produced the records the following day.

We acknowledge the Department's concern regarding employers' compliance with the statute, but the Department has not established that the grocery industry is a highly or pervasively regulated industry; thus, the Department may not circumvent the requirements of the Fourth Amendment. Therefore, as the Child Labor Act provides, once the Department makes the request and the employer "refuses" inspections then, pursuant to Tennessee Code Annotated § 50-4-101, the Department may obtain an administrative subpoena. The Attorney General recognized this requirement in an Attorney General Opinion it issued in 1989. In that opinion, the Attorney General opined on the question of whether a demand by an agent of the Tennessee Bureau of Investigation made pursuant to Tennessee Code Annotated § 71-5-118 and Executive Order 87 that a physician participating in the Medicaid program produce Medicaid-related patient files and records for inspection, copying, and/or seizure constituted an unconstitutional warrantless search. Tenn. Op. Att'y Gen. 89-96 (Jul. 14, 1989). The Attorney General opined that the demand itself did not constitute a warrantless search because the provider had a contractual obligation to provide the records, however, if the provider objected to providing the records, a subsequent search and seizure without an administrative search warrant would constitute an unreasonable search and seizure, prohibited by the Fourth Amendment. *Id*. In this case, there is no such contractual obligation. The Attorney General further noted in that opinion the unwillingness of the United States Supreme Court to extend the "pervasively regulated industry" exception beyond the liquor and gun industries.

Before we conclude our discussion, we wish to acknowledge the Department's reliance on two Tennessee Supreme Court decisions, which we are bound to follow if they are on point. In the case of *Clay County Manor, Inc. v. State of Tenn., Dep't of Health & Environ.*, 849 S.W.2d 755 (Tenn. 1993), the court held that the Department of Health and Environment had the authority to conduct unannounced inspections of nursing homes pursuant to state and federal statutes and regulations, and suspensions of admissions to the home for refusal to permit these inspections was justified. We acknowledge factual similarities between *Clay County* and this case; however, the missing ingredient in *Clay*

-14-

*County* is that the Fourth Amendment was not an issue and was not discussed in relation to the propriety of the inspections; thus, it is not instructive on the issue of Publix's Fourth Amendment defense.

The Department also relies upon *State v. Kirkland*, 655 S.W.2d 140 (Tenn. 1983), in which our Supreme Court held that the requirements of the Scrap Jewelry Metal Dealers Act of 1980, which required that a log of all purchases be kept and that the log be open to inspections at all times by police authorities, did not violate the provisions of the Fourth Amendment or the Tennessee Constitution regarding unreasonable searches. *Id*. at 142. The court based its decision in part upon the determination that the scrap jewelry and metal business was a *highly regulated industry* because it was a "close relative" to the pawnbrokers' business, which has long been regulated as an exercise of the state's police power. *Id*. at 142 (citing *State v. Barnett*, 389 So.2d 352 (La.1980)). Significantly, the decision in *State v. Kirkland*, 655 S.W.2d 140 (Tenn. 1983), was decided prior to the United States Supreme Court's decision in *New York v. Burger*, 482 U.S. 691 (1987), which discussed at length the confines of warrantless inspections under the Fourth Amendment and set forth the three criteria for such inspections to be constitutionally acceptable.

For the foregoing reasons, we find *Clay County* and *Kirkland* distinguishable.

The Child Labor Act provides authority to the Department to immediately request the records that are required to be maintained by the Act be produced for inspection, however, if the employer refuses an immediate inspection of the records, the appropriate recourse is for the Department to seek an administrative warrant pursuant to Tennessee Code Annotated § 50-4-101, and as *McLaughlin* instructs, the Department may not threaten Publix with a penalty for asserting its Fourth Amendment right. *McLaughlin*, 849 F.2d at 997.

Accordingly, we reverse the finding that Publix was in violation of Tennessee Code Annotated § 50-5-111(4) because it furnished the records to the Department and it was not required to produce such records immediately based upon its Fourth Amendment protections against warrantless inspections.

**In Conclusion**

The judgment of the trial court is reversed and this matter is remanded to the trial court with instructions to enter judgement consistent with this opinion, reversing the decision of the Tennessee Department of Labor & Workplace Development as to the assessment of penalties against Publix for violations of Tennessee Code Annotated § 50-5-111(1), (4), and

remanding the case to the Department with instructions to rescind the citations and assessments issued against Publix for the violation of Tennessee Code Annotated § 50-5-111(1), (4).

Costs of appeal are assessed against the Tennessee Department of Labor & Workplace Development.

_____
FRANK G. CLEMENT, JR., JUDGE