IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 24, 2018 Session

**DAVID BANKS v. UNIVERSITY OF TENNESSEE**

**Appeal from the Chancery Court for Davidson County**
**No. 16-617-II          William E. Young, Chancellor**

_____

**No. M2017-01358-COA-R3-CV**

_____

The University of Tennessee at Knoxville terminated the employment of Appellant, a tenured faculty member. Appellant appealed his termination to an administrative hearing officer pursuant to the Tennessee Uniform Administrative Procedures Act. Following a contested hearing, the hearing officer upheld the University's termination of Appellant. Appellant then petitioned the chancery court to reverse the decision of the hearing officer. The chancery court upheld the hearing officer's decision to affirm the termination of Appellant's employment and tenure. Discerning no error, we affirm the judgment of the chancery court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY W. ARMSTRONG, JJ., joined.

David Banks, Oak Ridge, Tennessee, Pro se.

Frank H. Lancaster, Knoxville, Tennessee, for the appellee, University of Tennessee.

**OPINION**

**I.     FACTS & PROCEDURAL HISTORY**

Dr. David Banks was hired by the University of Tennessee at Knoxville (the "University") in 2006. Dr. Banks came to the University with a distinguished academic and employment history. Prior to his tenure with the University, Dr. Banks earned his

Ph. D. in computer science from the University of North Carolina at Chapel Hill, held a post-doctoral fellowship at NASA Langley Research Center, was an associate professor at Mississippi State University, and was a tenured associate professor at Florida State University. Dr. Banks' academic background is in mathematics and computer science, with a focus on applying 3D graphics to scientific and medical data. In 1994, Dr. Banks' research paper called "Illumination in Diverse Co-dimensions" was published in one of the top journals in his field, and the topic of this paper has become known as the "Banks Illumination Model." Dr. Banks won an award for the best paper in 2003 at the well-respected Institute of Electrical and Electronics Engineers Visualization Conference. In 2004, Dr. Banks had five refereed journal articles in press or under review. While at Florida State, Dr. Banks helped found the Visualization Laboratory and was nominated for four teaching awards. He also brought in millions of dollars in external grant and contract funding during the decade preceding his move to the University.

In 2004, Dr. Banks interviewed for a joint position with the University and Oak Ridge National Laboratory. Dr. Banks began his employment with the University in 2006 and was awarded tenure in 2007. Dr. Banks' position with the University required that he spend 50% of his time working at the University and the other 50% of his time on research matters at Oak Ridge. Although Dr. Banks was officially an employee of the University, Oak Ridge contributed 50% of Dr. Banks' salary for his work performed at the Laboratory.

While Dr. Banks seemed to be on an upward trajectory early in his career, he took a sudden and unexpected turn shortly into his tenure at the University. The record in this case includes five performance reviews, which generally reveal the unraveling of Dr. Banks' employment with the University over the years. In 2007, Dr. Banks received a rating of "meets expectations" overall but of "needs improvement" in the area of teaching. The only source of external funding that Dr. Banks contributed to the University that year was the portion of his salary paid by Oak Ridge. In 2008-2009, Dr. Banks was rated as "meets expectations" overall and for teaching, but as "falls short of meeting expectations" for his research, scholarship, and creative activity. Again, his only source of external funding was from Oak Ridge. In 2009-2010, Dr. Banks was rated as "needs improvement" and "falls short of meeting expectations" for teaching. The students' comments on Dr. Banks' teaching performance were "very negative," and he was not adequately engaging with graduate students. He was also rated as "falls short of meeting expectations" for his research, scholarship, and creativity. Of particular importance to the University, Dr. Banks' supervisor at Oak Ridge requested improved performance from Dr. Banks on that front as well. The department head evaluating Dr. Banks noted that he "needs to work with the department head and [Oak Ridge] on a plan that addresses both UT and [Oak Ridge's] concerns." It appears Dr. Banks never followed up with this plan.

2

As Dr. Banks would later admit, during the fall of 2011, he simply stopped reporting to work at Oak Ridge. In a meeting with University supervisors in February 2012, Dr. Banks attempted to explain his absence as being the result of a family situation that required him to travel out of town frequently. This explanation, however, came months after Dr. Banks stopped reporting to work at Oak Ridge and on the heels of several years of complaints from supervisors at Oak Ridge regarding sub-par performance. After this meeting with Dr. Banks, University officials made the decision that, given Dr. Banks' admission that he was not performing his duties at Oak Ridge, they could not continue to accept payment from Oak Ridge for half of his salary. As a result, University officials came up with a plan to pay for Dr. Banks' entire salary for the next two years. Shortly thereafter, Dr. Banks received his evaluation for 2011-2012, in which his performance was rated as "unsatisfactory." His evaluator noted that Dr. Banks was "completely disengaged from department activities. He does not contribute to faculty meetings, nor does he respond to emails or interact with his colleagues in a substantive way." His research program was deemed "inactive," and teaching evaluations were "poor to marginal."

This last evaluation constituted Dr. Banks' third evaluation of "needs improvement" or worse in a period of five years, which triggered the University's "cumulative performance review process" pursuant to University policy. Over the next several months, multiple levels of University faculty and administrators reviewed Dr. Banks' performance at the University, and all but one of these people came to the same conclusion – Dr. Banks' employment with the University should be terminated. In the end, the University Chancellor is the ultimate decision-maker with regard to whether to institute termination proceedings. *See,* University Faculty Handbook Section 3.12.1.1. After his own review of the material related to Dr. Banks' employment, the University Chancellor determined that "the only conclusion you can reach [is] that since 2006, [Dr. Banks] has not been productive at the University of Tennessee and tenure should be revoked." On June 17, 2014, the University Chancellor sent Dr. Banks a twelve page letter detailing his termination for "adequate cause" under the University's Faculty Handbook, which included "failure to demonstrate professional competence in teaching, research, or service," "failure to perform satisfactorily the duties and responsibilities of the faculty position," and a "serious violation of professional responsibility in relations with students, employees, or members of the community." The University Chancellor concluded his letter by stating that termination of Dr. Banks' tenure with the University was "the only academically acceptable course of action."

Pursuant to the University's handbook, Dr. Banks was afforded two options by which to contest his termination – a hearing under the Tennessee Uniform Administrative Procedures Act ("TUAPA") or a hearing before a tribunal. *See,* University Faculty Handbook §§3.12.1.1, 3.12.1.5. Dr. Banks, represented by counsel, chose to contest his termination by way of a contested TUAPA hearing. To that end, a four-day

3

administrative hearing was held, during which an administrative record of more than 4,000 pages accumulated. In that hearing, the University bore the burden of proof, by a preponderance of the evidence, of establishing that Dr. Banks' termination was justified and appropriate. *See* Tenn. Comp. R. & Regs. 1720-01-05-.01(14)(j). On January 11, 2016, the appointed administrative law judge issued a comprehensive Initial Order, which determined that the University had met its burden of proving that Dr. Banks was terminated properly. This Initial Order was upheld in a Final Order by the University's Acting Agency Head on May 20, 2016.

Dr. Banks subsequently filed a petition for judicial review of the Final Order. In his brief in support of his petition for review of agency action, Dr. Banks requested that the chancery court reverse the decision to uphold the termination of his tenure and employment after review of the following issues:

> A. Did the Acting Agency Head fail to give appropriate weight to Dr. Banks' 50% appointment at the University in reviewing his performance at University of Tennessee under the statutorily required clear and convincing burden of proof?
>
> B. Did the Acting Agency Head fail to adequately consider the constructive denial of Dr. Banks' Faculty Modified Duties Assignment (FMDA) Request to Dean Davis and Dr. Tomsovic under the statutorily required clear and convincing burden of proof?

The chancery court held a hearing on Dr. Banks' petition on November 9, 2016. On that day, the court issued a ruling from the bench upholding the agency's determination that the University properly terminated Dr. Banks' employment. The court entered a written order to that effect on December 29, 2016. According to the chancery court, "the two narrow issues" raised by Dr. Banks were without merit. The court concluded that Dr. Banks was incorrect regarding the proper burden of proof relevant to the University's decision to terminate him. The chancery court noted that the "clear and convincing evidence" standard proposed by Dr. Banks from Tennessee Code Annotated section 49-8-301–304 related to schools governed by the Tennessee Board of Regents system. However, the court found that the University is not a part of the Board of Regents system but was created under Tennessee Code Annotated section 49-9-101, et seq. According to the trial court, under this statutory scheme, the TUAPA applied, and Tenn. Comp. R. & Regs. 1720-01-05-.01(12)(d) provided that in a contested case, the Petitioner (here, the University) bore the burden of proof *by a preponderance of the evidence* that an issue should be resolved in its favor. Further, the court determined that there was "more than enough evidence in the record to support the [Agency Head's]

finding" upholding Dr. Banks' termination.

With regard to Dr. Banks' assertion that the Agency Head did not adequately consider the University's "constructive denial" of Dr. Banks' request for a Faculty Modified Duties Assignment (in light of his family situation that kept him away from the University), the court held that Dr. Banks had waived this argument by not raising it before the tribunal below. Even if the argument had not been waived, the court found that whether or not to approve a Faculty Modified Duties Assignment was squarely within the University's discretion and Dr. Banks' never even made a proper request for such an assignment in the first place. In all, the chancery court affirmed the University's termination of Dr. Banks' employment and tenure. Dr. Banks has now appealed that decision to this Court.

## II. ISSUES PRESENTED

Dr. Banks presents the following issues for review on appeal, which we have restated as follows:

1.      Whether Dean Katrice Jones Morgan was a proper administrative law judge?

2.      Whether Dean Morgan erred in neglecting to rule on the existence and scope of Dr. Banks' contract with the University?

3.      Whether Dean Morgan erred in neglecting to consider Dr. Banks' reports of plagiarism?

4.      Whether Dean Morgan's initial order to terminate Dr. Banks' tenured employment is defective because it did not articulate any particular offense that met the University's grounds for termination of tenured employment or that Dr. Banks committed any such offense.

5.      Whether President Katherine High's final order to terminate Dr. Banks' tenured employment was defective because it did not articulate any particular offense that met the University's grounds for termination, or because President High engaged in ex parte communications in violation of the Rules of the University for conducting UAPA contested cases?

6.      Whether the chancery court erred in failing to rule on numerous motions filed by Dr. Banks?

5

7. Whether the chancery court erred in determining the standard of review for the appeal below?

8. Whether the chancery court erred in failing to rule on the existence and scope of Dr. Banks' contract with the University?

9. Whether the chancery court erred in determining the University's obligations to Dr. Banks pursuant to the Family Medical Leave Act?

10. Whether the chancery court erred in allowing Dr. Banks' counsel to withdraw?

11. Whether the chancery court erred by ruling on the case prior to the hearing?

## III. STANDARD OF REVIEW

The process for judicial review of an agency decision begins in chancery court in accordance with the Tennessee Uniform Administrative Procedures Act. *See* Tenn. Code Ann. § 4-5–322(b)(1)(A). When an administrative agency is acting within its area of specialized knowledge, experience, and expertise, a trial court's review of the agency's decision "is governed by the narrow standard contained in Tennessee Code Annotated § 4-5-322(h) rather than the broad standard of review used in other civil appeals." *Publix Super Mkts., Inc. v. Tenn. Dep't of Labor & Workforce Dev., Labor Standards Div.*, 402 S.W.3d 218, 222 (Tenn. Ct. App. 2012) (citing *Willamette Indust., Inc. v. Tenn. Assessment Appeals Comm'n*, 11 S.W.3d 142, 147 (Tenn. Ct. App. 1999)). Tennessee Code Annotated section 4-5-322(h) sets forth the following standard for courts reviewing an agency's decision:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or

6

clearly unwarranted exercise of discretion; or

(5)(A) Unsupported by evidence that is both substantial and material in light of the entire record.

(B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Furthermore, "[n]o agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision." Tenn. Code Ann. § 4-5-322(i).

An aggrieved party may then appeal the decision of the chancery court to this Court pursuant to Tennessee Code Annotated section 4-5-323:

(a) An aggrieved party may obtain a review of any final judgment of the chancery court under this chapter by appeal to the court of appeals of Tennessee.

(b) The record certified to the chancery court and the record in the chancery court shall constitute the record in an appeal . . . .

(c) The procedure on appeal shall be governed by the Tennessee Rules of Appellate Procedure.

When this Court is evaluating a trial court's review of an agency's decision, we must determine "'whether or not the trial court properly applied the . . . standard of review found at Tennessee Code Annotated § 4-5-322(h).'" *Wade v. Tenn. Dep't of Fin. & Admin.*, 487 S.W.3d 123, 126-27 (Tenn. Ct. App. 2015) (*quoting Jones v. Bureau of TennCare*, 94 S.W.3d 495, 501 (Tenn. Ct. App. 2002)).

## IV. DISCUSSION

## A. Issues Presented for Review

As a preliminary matter, we note that Dr. Banks asserts a myriad of alleged errors on appeal, most of which are not proper for this Court's review. Dr. Banks appears to fundamentally misunderstand the purpose of judicial review of an agency decision. Dr.

Banks submitted close to 100 filings in the chancery court *after* the court entered its final order affirming his termination. Dr. Banks essentially used the trial court, and is now attempting to use this court, as a forum to air his grievances with the University. That, however, is not the purpose of judicial review, and we reject any attempt to litigate issues on appeal that were not properly raised in the tribunals below.

In his petition for judicial review of this matter in chancery court, Dr. Banks only raised two fairly narrow issues for judicial review, which were recited in the chancery court's order as follows:

1.      Did the Acting Agency Head fail to give appropriate weight to Dr. Banks' 50% appointment at the University in reviewing his performance at University of Tennessee under the statutorily required clear and convincing burden of proof [set forth in Tenn. Code Ann. § 49-8-303(a)(4)]?

2.      Did the Acting Agency Head fail to adequately consider the constructive denial of Dr. Banks's Faculty Modified Duties Assignment (FMDA) Request to [UTK officials] Dean Davis and Dr. Tomsovic under the statutorily required clear and convincing burden of proof [set forth in Tenn. Code Ann. § 49-8-303(a)(4)]?

Now, however, in his appeal to this court, Dr. Banks raises a total of eleven issues, most of which were ripe for appeal but, for reasons unknown to this Court, were not raised as issues before the chancery court. The following issues raised by Dr. Banks on appeal to this Court were ripe for appeal but were not raised for review in the chancery court:

1.      Whether Dean Katrice Jones Morgan was a proper administrative law judge?

2.      Whether Dean Morgan erred in neglecting to rule on the existence and scope of Dr. Banks' contract with the University?

3.      Whether Dean Morgan erred in neglecting to consider Dr. Banks' reports of plagiarism?

4.      Whether Dean Morgan's initial order to terminate Dr. Banks' tenured employment is defective because it did not articulate any particular offense that met the University's grounds for termination of tenured employment or that Dr. Banks committed any such offense.

5.      Whether President Katherine High's final order to terminate Dr. Banks'

8

tenured employment was defective because it did not articulate any particular offense that met the University's grounds for termination, or because President High engaged in ex parte communications in violation of the Rules of the University for conducting UAPA contested cases?

9. Whether the chancery court erred in determining the University's obligations to Dr. Banks pursuant to the Family Medical Leave Act?[1]

"It is axiomatic that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court." *Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010). Dr. Banks has, therefore, waived review of the foregoing issues. *See, Black v. Blount,* 938 S.W.2d 394, 403 (Tenn. 1996) (holding that "[u]nder Tennessee law, issues raised for the first time on appeal are waived.").


**B.** **Motions Outstanding in Chancery Court**

Dr. Banks asserts the following as reversible error by the chancery court: "Appellant requested Chancery Court to rule on various motions, including motions to determine whether some 100 instances of re-published works met the University's description of plagiarism, to determine the existence and scope of Appellant's Contract, and to provide injunctive relief under 42 U.S. Code § 1983. The Chancery Court neglected to decide these questions or act on these motions." Dr. Banks does not list the specific motions to which he is referring or any harm he supposedly suffered by the trial court's alleged failure to rule on them. At any rate, we cannot determine any error on the trial court's part for failure to address his copious filings – motions or otherwise.

As we discussed above, Dr. Banks filed nearly 100 documents after entry of the trial court's final order. A review of the record suggests that he misunderstands the finality of the trial court's December 29, 2016 order. On March 3, 2017, the trial court did in fact address the abundance of filings by Dr. Banks. The court appropriately decided to treat all of his pleadings objecting to the final order as motions to alter or amend pursuant to Tennessee Rule of Civil Procedure, Rule 59.04. The court then, with great care and patience, discussed and denied each of the following motions:

1. Petition to Reconsider Withdrawal

---

1. Although this issue theoretically would have been ripe for review by the chancery court, Dr. Banks did not properly raise it as an issue. Rather, he requested that the chancery court review the agency's determination regarding his request for a Faculty Modified Duties Assignment – not a request for leave pursuant to the Family Medical Leave Act.

9

2. Notification Regarding Counsel

3. Motion for Declaratory and Injunctive Relief

4. Prayer for Ruling on Plagiarism and Academic Misconduct

5. Notice of Spoliation of Records

6. Question of Copyright

7. Notice of Defective Charges

8. Motion Regarding Fear Rally at the University of Tennessee

9. Question About Plagiarism and Copyright

10. Motion Regarding Aggravated Perjury Regarding Vote in Favor of Creating the Department of Electrical Engineering and Computer Science

11. Motion Regarding Aggravated Perjury During Deposition

12. Motion Regarding Aggravated Perjury in Court

13. Motion Regarding False Report

14. Question of Offenses Against Administration of Government

15. Question of Concealed Records

16. Question of Budget and Expenditure

17. Prayer for Injunctive Relief

The court also set the Motion to Alter or Amend for a hearing. This motion was subsequently denied as well. The court then concluded with the following: "In addition to the above motions, notices, prayers, petitions and questions, the Petitioner has filed other documents that do not constitute motions. Accordingly, they need not be addressed. All other motions or claims for relief not addressed in this order or in the Court's prior orders, apart from the above-mentioned motion to alter or amend, are hereby denied." We determine no error on the part of the trial court in ruling (or not ruling) on these filings. Moreover, Dr. Banks' failure to specify any alleged harm puts this issue into the category of errors not affecting the merits of the decision in this case, and is therefore not reversible error pursuant to Tennessee Code Annotated section 4-5-322(i).

## C.    Proper Standard of Review

Despite clear law to the contrary, Dr. Banks continues to assert that the proper burden of proof that the University was required to carry was "clear and convincing evidence" to support the validity of his termination.  Our analysis of this issue mirrors the analysis by the trial court.  Dr. Banks simply misunderstands the law on this issue.  The "clear and convincing evidence" standard applies to schools that are part of the Board of Regents system.  *See,* Tenn. Code Ann. §§ 49-8-301–304.  The University of Tennessee at Knoxville is not part of the Board of Regents system but is rather created by a separate statutory scheme.  *See,* Tenn. Code Ann. §§ 49-9-101–1502.  The standard of proof required under these circumstances is whether the University proved its case by a "preponderance of the evidence."  Tenn. Comp. R. & Regs. 1720-1-5-.01(12)(d).  We affirm the trial court on this issue.

## D.    Existence of a Contract between Dr. Banks and the University

Dr. Banks alleges that the Agency Head erred in concluding that he did not have a "contract with the University."  It is difficult to discern what exactly he insists made up this contract, or why he could never provide a copy of it himself.  Dr. Banks was a tenured professor with the University, and he was terminated pursuant to the guidelines for revoking a faculty member's tenure.  We conclude that there is substantial and material evidence in the record to support the Agency Head's determination that Dr. Banks did not have a contract with the University.  We, therefore, affirm the trial court's decision regarding the non-existence of his alleged contract.

## E.    Withdrawal of Dr. Banks' Counsel

Dr. Banks claims that he was denied due process because the trial court allowed his counsel to withdraw.  We disagree with this premise on several bases.   Although the specifics of the conundrum are not illuminated in the record, Dr. Banks' attorney, Ms. Fisher, apparently came to a point in her representation that she no longer found it prudent to represent him and filed a motion with the court to withdraw.  Not only did Ms. Fisher herself feel compelled to withdraw, but she represented to the court that she consulted with the Tennessee Board of Professional Responsibility on the matter and they told her that she must withdraw.  The court granted Ms. Fisher's motion based on the representation that the Board required her to withdraw.

Dr. Banks was given ample time to hire a new attorney after the withdrawal of his previous one.  His inability to procure counsel due, according to Dr. Banks himself, to the

11

nature of his case, does not violate his right to due process. Dr. Banks was not entitled to have counsel appointed by the court. *Hessmer v. Miranda*, 138 S.W.3d 241, 245 (Tenn. Ct. App. 2003) (holding that indigent civil litigants, as opposed to indigent criminal defendants, do not have a statutory or constitutional right to court-appointed counsel.) Whether or not to permit the withdrawal of counsel is within the sound discretion of the trial court.

> The grant or denial of a request to withdraw as counsel is a matter addressed to the court's discretion. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 135 (1st Cir. 1985); *Washington v. Sherwin Real Estate, Inc.*, 694 F.2d 1081, 1087 (7th Cir. 1982); *Devincenzi v. Wright*, 882 P.2d 1263, 1265 (Alaska 1994); *In re Franke*, 55 A.3d 713, 720 (Md. Ct. Spec. App. 2012); *Williams v. Bank One, Texas, N.A.*, 15 S.W.3d 110, 114 (Tex. App. 1999); *Kingdom v. Jackson*, 896 P.2d 101, 103 (Wash. Ct. App. 1995). Our supreme court has explained what a trial court must consider in making a discretionary decision and what constitutes an abuse of that discretion:
>
>> Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.
>
> *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (internal citations omitted).

*In re Jamie B.*, No. M2016-01589-COA-R3-PT, 2017 WL 2829855, at *5 (Tenn. Ct. App. June 30, 2017).

Based on our review of the record, it appears that Ms. Fisher, the trial court, and even opposing counsel went to great lengths to protect Dr. Banks' interest in this situation. Ms. Fisher did not seek to withdraw until the hearing of this matter was concluded, the court had orally ruled from the bench, counsel had submitted proposed orders for the court to execute, and Ms. Fisher had also prepared a notice of appeal for Dr. Banks to sign and file on his own behalf. Counsel for the University alerted the court to potential issues with the deadline for the notice of appeal. The trial court went to great lengths to give Dr. Banks sufficient time to procure new counsel while protecting his

right to appeal.  We conclude that the trial court acted well within its discretion to permit Ms. Fisher to withdraw as counsel for Dr. Banks.

## F.     <u>Chancery Court's Oral Ruling</u>

Finally, Dr. Banks alleges that he was prejudiced by the trial court's oral ruling on the day of the hearing of this matter, a ruling that he insists was pre-prepared.  He cites no authority for the proposition that the trial court erred in ruling from the bench, and our review of the case law reveals none.  To the contrary, there is an abundance of case law in Tennessee in which trial courts rule from the bench.  See, e.g., *Brookins v. Tabor*, No. W2017-00576-COA-R3-CV, 2018 WL 2106652, at * 8 (Tenn. Ct. App. May 8, 2018); *Parigin v. Mills*, No. E2016-00640-COA-R3-CV, 2017 WL 1032740, at *3 (Tenn. Ct. App. Mar. 16, 2017), *perm. app. denied* (Tenn. Aug. 16, 2017). There is also nothing in the record to support Dr. Banks' assertion that the ruling was pre-prepared.  Both parties prepared and delivered extensive briefs on the issues to the court prior to the hearing. The court may have properly made notes to prepare prior to or during the hearing.  Again, Dr. Banks has not given any support for this allegation of error, nor has he alleged any particular harm caused thereby.  We conclude the trial court did not err in ruling from the bench and subsequently issuing a comprehensive written order reflecting that ruling.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the chancery court.  Costs of this appeal are taxed to the Appellant, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE

13