IN THE COURT OF APPEALS OF TENNESSEE
AT  KNOXVILLE
April 15, 2015 Session

## IN RE: KALOB S., ET AL.

**Direct Appeal from the Juvenile Court for Hamilton County**
**No. 259929, 259930, 259931, 259932, 259933, 259934, 259935**
**Robert D. Philyaw, Judge**

_____

### No. E2014-02016-COA-R3-PT-FILED-JUNE 12, 2015

_____

This case involves the termination of the parental rights of a biological father to his seven children.  Appellant contends that the trial court erred in terminating his parental rights.  Because the grounds for termination are met by clear and convincing evidence, and there is also clear and convincing evidence that termination is in the best interest of the minor children at issue, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed in part, Affirmed in Part and Remanded

BRANDON O. GIBSON, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and THOMAS R. FRIERSON, II, J., joined.

David Christopher Veazey, Chattanooga, Tennessee, for the appellant, Chad S.

Herbert H. Slatery, III, Attorney General and Reporter, and Paul Jordan Scott, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

John Allen Brooks, Guardian Ad Litem.

### OPINION

### I. Background

Chad S. ("Father") and Ellen B. ("Mother") are the biological parents of the seven minor children at issue in this case, Kalob S. (born in 2001), Elijah S. (born in 2003), Gabriel S. (born in 2005), Noah S. (born in 2006), Ariel S. (born in 2007), Amaila S. (born in 2009), and Abigail S. (born in 2011).  Although the trial court terminated the

parental rights of Mother, in addition to those of Father, only Father appeals to this Court.

Since early 2012, all seven children have been in the custody of the Tennessee Department of Children's Services ("DCS"). On February 22, 2012, the children were removed from Mother's home and taken into protective custody. At the time of removal, Mother was incarcerated, facing probation violation charges for domestic violence, and Father was facing charges for cocaine possession for resale, aggravated domestic assault, and domestic vandalism. The juvenile court awarded temporary custody of the children to DCS on February 23, 2012, and the children have remained in foster care since that date.

The juvenile court later adjudicated the children dependent and neglected, finding that both parents had significant drug and domestic violence issues. In fact, drug abuse and violence seemed to plague the family's home. Not only did Father admit to using marijuana, cocaine, and prescription drugs, but he also allowed Kalob, his oldest son, to accompany him when he sold drugs. Before he was eleven years old, Kalob was also using marijuana. Mother and Father regularly committed acts of violence against each other, and violence was also directed towards the children. The children described instances of receiving beatings from both parents. Gabriel also described Father throwing him down the stairs on one occasion.

In addition to the drug and violence issues, the children described being scared, cold, and hungry while living with Mother and Father. When taken into protective custody, Amaila had developed a nervous habit of pulling her hair out; Ariel, at four years old, would swear and use inappropriate language; and Abigail, at just seven months old, was very underweight. Additionally, Noah described being locked in a laundry room with only a bag of potato chips after asking for food, and the boys said they had to sleep on the floor, with piles of clothes to keep them warm. Moreover, the children missed months of school, forcing Noah to repeat a grade.

The children also indicated that they were afraid to return home and that they were nervous about where they are going to be placed. Noah had nightmares for months when he thought he would have to return home. Even Abigail, the youngest child, had night terrors after the last visits with her parents. The boys stated that they did not want to return to Mother or Father because they did not want to be hungry anymore.

Following the removal of the children, DCS developed a series of three permanency plans dated March 9, 2012, April 30, 2013, and March 12, 2014. Among other things, the permanency plans required Father to be alcohol and drug free, abide by the terms of his probation sentence, refrain from incurring any new legal charges, maintain contact with DCS, obtain legal and verifiable income, provide a safe and stable home, and participate in counseling for grief and domestic violence. DCS provided Father with referrals for counseling and parenting classes, facilitated visits for the parents

and children, and attempted to obtain Father a furniture voucher. Additionally, a DCS-contracted counselor provided Father counseling on domestic violence, anger management, and grief and helped to develop and strengthen his parenting skills. Father initially cooperated with DCS by completing an outpatient drug program and following the recommendations of his treatment providers. He also regularly visited the children and participated in in-home counseling. At a permanency hearing held in February of 2013, the juvenile court found Father to be in substantial compliance with his responsibilities under the permanency plan.

Although DCS became optimistic in 2013 about Father's potential for reunification with the children, he suffered a relapse later that year. Father's last visit with his children was in September of 2013, and according to the DCS caseworker, Father subsequently stopped attending visits and Child and Family Team Meetings. On November 5, 2013, the juvenile court suspended visitation between Father and his children after he tested positive for methamphetamines, opiates, and marijuana.

Soon after the suspension of his visits, Father was charged with a number of criminal offenses over roughly a one-month period. On November 28, he was charged with theft under $500. On December 4, he was charged with aggravated burglary of an occupied habitation and theft over $500. On December 25, he was charged with theft over $1000, possession of drug paraphernalia, and unlawful carrying/possession of a weapon. On December 30, he was charged with driving on a revoked, suspended, or cancelled license, light law violation, financial responsibility law, and driving an unregistered vehicle. Finally, on January 1, 2014, Father was again charged with theft over $1000. He was last arrested on January 15, 2014, and as of the time of the termination hearing, he remained incarcerated under no bond.

On March 18, 2014, DCS filed a petition to terminate the parental rights of Mother and Father to their seven children. The juvenile court held a hearing on the petition on August 18, 2014. Following the hearing, the court entered an order terminating the parental rights of both Mother and Father. Specifically, the court found, by clear and convincing evidence, that three grounds for terminating Father's parental rights existed: failure to provide a suitable home, failure to comply with permanency plan requirements, and persistence of conditions. The court also found, by clear and convincing evidence, that terminating the parental rights of Father and Mother was in the best interest of the children. Father filed a timely appeal.

## II. Issues Presented

Father raises the following issues for review on appeal, which we have restated:

3

1.      Whether the trial court erred in terminating Father's parental rights on three statutory grounds: Abandonment for failure to provide a suitable home, noncompliance with the permanency plans, and persistence of conditions.

2.      Whether the trial court erred in finding that DCS provided "reasonable efforts" to reunite the family, and so erred in finding grounds for the termination of parental rights.

3.      Whether the trial court erred in finding that terminating Father's parental rights was in the best interest of the children.

For the following reasons, we affirm the decision of the juvenile court.

### III. Standard of Review

Although parents have a fundamental right to the care, custody, and control of their children under the federal and Tennessee constitutions, that right is not absolute. *In re S.Y.,* 121 S.W.3d 358, 366 (Tenn. Ct. App. 2003). Tennessee Code Annotated section 36-1-113(c) defines circumstances under which a parent's rights may be terminated. In order to terminate parental rights, a court must determine, by clear and convincing evidence, that at least one of the statutory grounds for termination exists and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c) (2014); *In re Adoption of Angela E.,* 402 S.W.3d 636, 639 (Tenn. 2013). On appeal, we first review the trial court's findings of fact *de novo* on the record with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *In re Taylor B.W.,* 397 S.W.3d 105, 112 (Tenn. 2013). We then review the trial court's order *de novo* to determine whether the facts amount to clear and convincing evidence that one of the statutory grounds for termination exists and, if so, whether the termination of parental rights is in the best interest of the child. *In re Taylor B.W.,* 397 S.W.3d at 112. "Clear and convincing evidence" has been defined as "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Adoption of Angela E.,* 402 S.W.3d at 640 (citing *In re Valentine,* 79 S.W.3d 539, 546 (Tenn. 2002)).

### IV. Discussion

#### A. Grounds for Termination

First, DCS, the Appellee, does not seek to defend the suitable-home ground on

appeal. DCS concedes that Tenn. Code Ann. section 36-1-102(1)(A)(ii) expressly requires reasonable efforts by DCS to assist the parent in providing a suitable home in the four months after the children first enter state custody. DCS also concedes that the record does not contain evidence indicating whether DCS's efforts in this case occurred within the first four months after removal, which would have been from February 22, 2012 to June 22, 2012. Accordingly, we must reverse the termination on this ground. However, only a single statutory ground must be proven in order to support an order for termination. *In re Audrey S.*, 182 S.W.3d 838, 862 (Tenn. Ct. App. 2005).

We next review the trial court's finding that grounds for termination of Father's parental rights were established by clear and convincing evidence. Father challenges the trial court's findings that the grounds of substantial noncompliance with the permanency plan and persistence of conditions existed; however, he only challenges these grounds for termination in regard to DCS's reasonable efforts to reunite the family. Father argues that the grounds of substantial noncompliance with the permanency plan under Tennessee Code Annotated section 36-1-113(g)(2) and persistence of conditions under section 36-1-113(g)(3) must fail because DCS failed to prove by clear and convincing evidence that it made reasonable efforts to reunify Father with his children. In his brief, Father relies on *In re Giorgianna H.,*[1] 205 S.W.3d 508 (Tenn. Ct. App. 2006), stating that for both of these grounds DCS must generally prove by "clear and convincing evidence that it made reasonable efforts to reunite the family and that these efforts were to no avail."

However, the Supreme Court of Tennessee recently addressed this issue in *In re Kaliyah S*. In considering DCS's reasonable efforts in the context of parental termination cases, the supreme court held, "in a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, *but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent*." *In re Kaliyah S.*, 455 S.W.3d at 556 (emphasis added). "En route to ruling the Court expressly overruled prior appellate decisions 'to the extent that those cases required the State to prove reasonable efforts as an essential component of the termination petition.'" *In re J.A.G.,* No. M2014-01469-COA-R3-PT, 2015 WL 1022281, at *3-4 (Tenn. Ct. App. Feb. 27, 2015) (quoting *In re Kaliyah S.*, 455 S.W.3d at 556.).

This Court recently applied the *In re: Kaliyah S.* holding in the case of *In re J.A.G.*, which involved a trial court's termination of parental rights on the grounds of substantial non-compliance with the permanency plan and persistence of conditions. *Id.* at *3. In *In re J.A.G.*, the biological mother challenged the termination of her parental rights on these grounds, but her only contention on appeal was that "DCS failed to prove its 'reasonable efforts' to assist her as a precondition to termination." *Id.* at *4. This

---

[1] *Overruled by In re Kaliyah S.*, 455 S.W.3d 533 (Tenn. 2015).

5

Court found that although the mother did not have the benefit of *In re Kaliyah* when briefing her case, the holding still effectively put an end to her appeal, as she failed to allege that she substantially completed the permanency plan requirements or that she resolved the conditions that led to her children's removal.[2] *Id.*

Thus, in light of the supreme court's holding in *In re: Kaliyah S.*, we find that the Father's argument with respect to the grounds of substantial non-compliance with the permanency plan and persistence of conditions is without merit. *See In re Faith W.*, No. M2014-01223-COA-R3-PT, 2015 WL 2438297 at *2 (Tenn. Ct. App. May 20, 2015). Like the mother in *In re J.A.G.*, Father does not contend that he substantially complied with the permanency plan requirements or that he resolved the conditions that led to the removal of the children, nor could he successfully do so. Although the evidence presented at the termination hearing suggested that Father initially cooperated with DCS and made strides towards compliance with the permanency plan, the efforts did not last. Father failed to comply with the majority of the requirements set out in the permanency plans.[3] Notably, he failed to abide by the terms of his probation, which resulted in his incarceration, and he failed to refrain from incurring new legal charges. In fact, between November 28, 2013 and January 1, 2014, Father accumulated numerous additional charges, including theft, aggravated burglary, and possession of drug paraphernalia. Additionally, all of the permanency plans required Father to remain drug and alcohol free. However, he admitted to using drugs during the relevant time period, and he tested positive for methamphetamines, opiates, and marijuana in November 2013.

Moreover, the children were removed from the home in 2012 due to the fact that both Mother and Father were facing criminal charges, and the juvenile court subsequently adjudicated the children dependent and neglected due to Mother's and Father's drug and domestic violence issues. At the time of the termination hearing, however, Father

---

[2] In his reply brief, Father erroneously argues that until *Kaliyah* is published, this Court is still required to use the framework in *In re Giorgianna H.* However, this Court found *In re Kaliyah S.* to be controlling in *In re J.A.G.* before the *Kaliyah* decision was published. *See In re J.A.G.*, 2015 WL 1022281, at *4. Unless explicitly designated "Not for Publication," all opinions of the Tennessee Supreme Court are published in the official reporter. Tenn. R. Sup. Ct. Rule 4(A)(2). Opinions reported in the official reporter are considered controlling authority for all purposes unless and until such opinion is reversed or modified. In addition, "we are bound to follow [Tennessee Supreme Court decisions] if they are on point." *Publix Super Markets, Inc. v. Tenn. Dep't of Labor & Workforce Dev.*, 402 S.W.3d 218, 230 (Tenn. Ct. App. 2012). In any event, the argument is now irrelevant, as the decision has been published as of the time of this Court's review.

[3] The juvenile court found that Father failed to comply with each of the following requirements of the permanency plans: (1) to provide a stable and appropriate residence for the children; (2) to abide by terms of his probation; (3) to lead a law abiding life; (4) to remain alcohol and drug free; (5) to maintain ongoing counseling to address his mental health and domestic violence issues; (6) to maintain a consistent source of income; and (7) to maintain consistent contact with DCS.

remained incarcerated and still faced pending criminal charges and potentially faced inpatient drug rehabilitation.

Therefore, the evidence supports the trial court's findings that DCS clearly and convincingly proved both alleged grounds for terminating Father's rights to his seven children. Father cannot prevail on his argument on appeal, which solely focuses on DCS's reasonable efforts, due to the *In re Kaliyah S.* holding. In accordance with *In re Kaliyah S.,* we consider the adequacy of DCS's efforts in the context of the best interest analysis.

### B. Best Interest of the Children

Because the trial court properly found the existence of at least one statutory ground for termination of Father's parental rights, we now consider the trial court's finding that terminating Father's parental rights is in the best interest of the children. Tennessee Code Annotated section 36-1-113(i) sets out a list of factors that are relevant in a best-interest analysis. However, this list of factors is not exhaustive, and a court need not find the existence of every factor for termination. *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). This Court has also noted that the best interest of a child must be determined from the child's perspective and not the parent's. *In re Arteria H.*, 326 S.W.3d 167, 182 (Tenn. Ct. App. 2010) (citing *White v. Moody,* 171 S.W.3d 187, 194 (Tenn.Ct.App.2004)).

The evidence clearly and convincingly established that it is in the best interest of the seven children at issue for Father's parental rights to be terminated. The record shows that Father has failed to make any adjustment of circumstance, conduct, or conditions to make it safe and in the best interest of the children to be placed in his care. *See* Tenn. Code Ann. § 36-1-113(i)(1). After reasonable efforts by DCS, Father also failed to make lasting adjustments for such a time that it does not appear that lasting change is likely. *See* Tenn. Code Ann. § 36-1-113(i)(2). Despite outpatient treatment, in-home services, and counseling for drug and domestic violence issues, Father continued to use drugs while his children were in state custody, as evidenced by his own testimony and a failed drug screen. His continuous criminal behavior after his children's removal also demonstrated that lasting change is unlikely.

The record also demonstrates that a change in caretakers at this stage would be detrimental to the children. *See* Tenn. Code Ann. § 36-1-113(i)(5). All of the children are placed in loving homes and have bonded with their foster families, and the foster families have each expressed their commitment to long-term care of the children residing with them. The families caring for Ariel, Amaila, and Abigail have also stated that they are willing to adopt. Moreover, the children have demonstrated that they are afraid to

return to Father and do not desire to do so.

Additionally, the record supports the trial court's findings that Father has shown brutality, abuse, or neglect toward the children or another in the household and that Father's criminal activity and drug use may render him unable to care for the children in a safe and stable manner. *See* Tenn. Code Ann. § 36-1-113(i)(6)-(7). As previously stated, Father and Mother have ongoing domestic violence issues with each other, and, according to the record, the children described several instances of Father committing acts of violence against them.

On appeal, Father argues that the trial court failed to properly consider DCS's reasonable efforts in its best interest analysis. As previously stated, the supreme court held in *In re Kaliyah S.* that proof of reasonable efforts is not a precondition to termination but that consideration of DCS's reasonable efforts to reunify the family should be weighed in the best-interest analysis. *In re Kaliyah S.*, 455 S.W.3d at 555. The court went on to state:

> As with other factual findings made in connection with the best-interest analysis, reasonable efforts must be proven by a preponderance of the evidence, not by clear and convincing evidence. *In re Audrey S.,* 182 S.W.3d at 861. After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest. *See In re Adoption of Kleshinski,* No. M2004-00986-COA-R3-CV, 2005 WL 1046796, at *17 (Tenn. Ct. App. May 4, 2005) (citing *In re M.J.B.,* 140 S.W.3d 643, 654 (Tenn.Ct.App.2004)); *see also In re Giorgianna H.,* [205 S.W.3d 508, 519 (Tenn.Ct.App.2006)]; *Tenn. Dep't of Children's Servs. v. T.M.B.K.,* 197 S.W.3d 282, 288 (Tenn.Ct.App.2006).

*Id.* at 555-56. However, the court also noted that it is possible for the best-interest factor regarding DCS's efforts to assist the parent to be determinative. *Id.* at 556. Father argues that evidence of DCS's lack of effort in this case should weigh heavily enough to be determinative. We disagree.

The record shows that DCS provided Father with referrals for counseling and parenting classes, facilitated visits for the parents and children, and attempted to obtain Father a furniture voucher. The record also shows that a DCS-contracted counselor provided Father help with parenting and counseling on domestic violence and grief. Furthermore, we note that DCS's efforts are merely one factor to be weighed in the best-

interest analysis. Father's argument regarding DCS's lack of reasonable efforts in this case simply does not persuade us that termination of Father's parental rights is not in the best interest of the children.

After considering the combined weight of the factual findings, it is our view that the trial court properly weighed the statutory best-interest factors in terminating Father's parental rights.

## V. Conclusion

For the foregoing reasons, we reverse the trial court's order, in part, and affirm the trial court's order terminating Father's parental rights. Costs of this appeal are taxed to the appellant, Chad S. Because Chad S. is proceeding *in forma pauperis* in this appeal, execution may issue for costs if necessary.

_____
BRANDON O. GIBSON, JUDGE